228 P.3d 1282 (2009)
154 Wash.App. 745
STATE of Washington, Appellant,
v.
Rodolfo Ramirez TINAJERO, aka Martin Estrada-Perez aka Jose Luis Olivera, Respondent.
No. 27932-4-III.
Court of Appeals of Washington, Division 3.
December 24, 2009.
Publication Ordered March 11, 2010.
*1283 Kevin Gregory Eilmes, Prosecuting Attorney's Office, Yakima, WA, for Appellant.
Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Respondent.
KULIK, A.C.J.
¶ 1 On August 18, 2007, police arrested Rodolfo Tinajero on an outstanding warrant. In Mr. Tinajero's wallet, police found multiple identifications that appeared to be forged, including a social security card and permanent resident card with the name Jose Luis Olivera. A jury found Mr. Tinajero guilty of unlawful possession of fictitious identification. The court vacated the verdict and dismissed the case, concluding that the State had not met its evidentiary burden as a matter of law. The State appeals.
¶ 2 The State presented substantial evidence to support the verdict. Therefore, we reverse the trial court and reinstate the jury verdict.

FACTS
¶ 3 On August 18, 2007, Detective Robert Tucker contacted Rodolfo Tinajero with the intent of executing an arrest warrant for Mr. Tinajero. Following the arrest, Detective Tucker searched Mr. Tinajero and found a pay stub, a social security card, a permanent resident card, a Washington identification card, a Costco card, and a Mexican government identification card. The Washington identification card had Mr. Tinajero's name on it. The Costco card and Mexican identification card also contained his name, along with his picture. The social security card and permanent resident card were both in the name of Jose Luis Olivera, but did not contain any pictures. Additionally, the pay stub was in the name of Jose Luis Olivera and contained the social security number found on the social security card previously mentioned. Mr. Tinajero was subsequently charged with unlawful possession of fictitious identification pursuant to RCW 9A.56.320(4).
¶ 4 At trial, Detective Tucker was qualified by the court as an expert witness regarding the validity of various forms of identification. Detective Tucker testified that he believed the social security and permanent resident cards found on Mr. Tinajero were forged documents, based on the lack of proper security features on the cards, as well as the quality of paper used to create them. He also testified that the Washington identification card appeared to be valid.
¶ 5 The State also presented Glennis Wilson, a bookkeeper for Big Cherry Orchards, who testified that the pay stub was valid and confirmed that an individual named Jose Luis Olivera had indeed worked for the company. Celestino Rodriguez, a supervisor involved in the hiring process at Big Cherry Orchards, also testified. He stated that, as part of the hiring process, workers were required to show identification, including a "green card." Report of Proceedings at 79.
¶ 6 Following the State's presentation of the case, Mr. Tinajero moved to dismiss the case, arguing that the State could not meet its burden as a matter of law. After an extended colloquy, the court reserved its decision *1284 on the motion until after the jury's verdict.
¶ 7 The jury returned a verdict of guilty. The court granted Mr. Tinajero's motion to dismiss and vacated the jury's verdict. The court based its decision on the fact that the State had not shown that a potential employer would be harmed or defrauded by the use of false identification and that, therefore, there was no evidence of intent to commit forgery. The court specifically noted that in order for Big Cherry Orchards to be defrauded by Mr. Tinajero, there must be both an intent to deceive and an intent to deprive. Although the court found that there was clearly an intent to deceive, it held that the State did not provide sufficient evidence to show that Big Cherry Orchards was deprived of anything.
¶ 8 The State appeals.

ANALYSIS
¶ 9 We evaluate a trial court's decision to vacate a jury verdict by first reviewing the elements of the crime charged. RCW 9A.56.320(4) states that "[a] person is guilty of unlawful possession of fictitious identification if the person possesses a personal identification card with a fictitious person's identification with intent to use such identification card to commit . . . forgery." A person is guilty of forgery if "[h]e possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged," with the "intent to injure or defraud." RCW 9A.60.020(1). Written instruments may include social security cards or permanent resident cards. See State v. Esquivel, 71 Wash.App. 868, 863 P.2d 113 (1993). With regard to the intent to defraud, it is sufficient "if an intent appears to defraud any person, association or body politic or corporate whatsoever." RCW 10.58.040.
¶ 10 In Esquivel, two men presented forged resident alien and social security cards to police officers after separate incidents. The documents correctly identified the individuals, but were not authentic. In both cases, the officers had reason to believe that the documents were forged and arrested the men for forgery.
¶ 11 At trial, both men admitted that the documents were not authentic, but argued that they did not intend to defraud the police officers. The trial court granted both defendants' motions to dismiss. On appeal, the court stated that "although possession alone is insufficient to prove guilty knowledge, possession together with slight corroborating evidence may be." Esquivel, 71 Wash.App. at 870, 863 P.2d 113. The court also determined that "`the unexplained possession and uttering of a forged instrument . . . is strong evidence or is evidence, or makes out a prima facie case of guilt of forgery of the possessor.'" Id. at 871, 863 P.2d 113 (quoting 1 C. TORCIA, WHARTON ON CRIMINAL EVIDENCE § 81, at 265-66 (14th ed. 1985)). The court concluded that the trial court erred by dismissing the cases because, "[b]y showing the cards to the officers, [the defendants] misrepresented their legal status, even though they did not misrepresent their legal names and other details about them." Id. at 872, 863 P.2d 113.
¶ 12 Here, the State presented expert testimony suggesting that Mr. Tinajero's social security and permanent resident cards were not authentic. These cards did not contain Mr. Tinajero's name.
¶ 13 The primary issue for the trial court was whether Mr. Tinajero intended to defraud Big Cherry Orchards by presenting inauthentic documents. Neither party disputes that the alleged actions of Mr. Tinajero were deceptive. However, the court struggled with whether Big Cherry Orchards had been deprived of something as a result of Mr. Tinajero's actions. The State argued that Big Cherry Orchards was deprived of the knowledge of the true identity of its employee.
¶ 14 Big Cherry Orchards is legally obligated to ensure that each of its employees has sufficient legal status to obtain employment in the United States. See 8 U.S.C.A. § 1324. If, in fact, Mr. Tinajero was not authorized to work in the United States, Big Cherry Orchards could incur potential liability for employing him. To avoid potential liability, Big Cherry Orchards must know the true identity of its employees. Although it is unclear what Mr. Tinajero's legal status was *1285 at the time that he was employed, it can be inferred that through his use of forged documents, he intentionally deprived Big Cherry Orchards of information that may have been material to his hiring.
¶ 15 In analyzing the trial court's decision to vacate a jury verdict, a trial court "may only determine whether there was `substantial evidence' tending to support all necessary elements of the crime." State v. Stiltner, 80 Wash.2d 47, 55, 491 P.2d 1043 (1971). "`[W]hether the evidence is sufficient to submit the issue to the jury is a question of law for the court and no element of discretion is involved.'" State v. Basford, 76 Wash.2d 522, 530, 457 P.2d 1010 (1969) (quoting State v. Zorich, 72 Wash.2d 31, 34, 431 P.2d 584 (1967)). The trial court "must assume the truth of the state's evidence and view it most strongly against the defendant and in a light most favorable to the state." State v. Randecker, 79 Wash.2d 512, 517, 487 P.2d 1295 (1971). In addition:
The fact that a trial or appellate court may conclude the evidence is not convincing, or may find the evidence hard to reconcile in some of its aspects, or may think some evidence appears to refute or negative guilt, or to cast doubt thereon, does not justify the court's setting aside the jury's verdict.
Id. at 517-18, 487 P.2d 1295.
¶ 16 Notably, "it is unnecessary for the court to be satisfied of the defendant's guilt beyond a reasonable doubt." Id. at 518, 487 P.2d 1295. It is only necessary for the court to be "satisfied that there is `substantial evidence' to support either the state's case, or the particular element in question." Id. And the court must view the evidence in the light most favorable to the State. Here, we conclude that the State presented substantial evidence to support the jury's determination.
¶ 17 Mr. Tinajero also argues that RCW 9A.56.320(4) is unconstitutional as applied to him and that it is void for vagueness. We are not persuaded by these arguments.
¶ 18 We reverse the trial court's order vacating the jury verdict and dismissing the case, and we remand for sentencing based upon the jury verdict of guilty.
WE CONCUR: SWEENEY and KORSMO, J.