# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___JUL 2 5 2013

_____
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Jul 25, 2013

Ronald R. Carpenter
Supreme Court Clerk



# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | No. 87282-1 |
| v. | ) | En Banc |
| VIANNEY VASQUEZ, | ) | Filed _____JUL 2 5 2013_____. |
| Petitioner. | ) | |

WIGGINS, J.—This case squarely asks us to determine under what circumstances we may infer an intent to injure or defraud under Washington's forgery statute, RCW 9A.60.020(1)(b). Vianney Vasquez had fake social security and permanent resident cards, both in his own name. After a Safeway store security guard found the cards in Vasquez's wallet following a search related to a shoplifting incident, the security guard called the police. Vasquez was arrested and charged with two counts of forgery under RCW 9A.60.020(1)(b). A jury convicted him and the Court of Appeals affirmed his convictions.

We hold that the State presented insufficient evidence that Vasquez possessed the cards with an intent to injure or defraud, an essential element of the forgery statute. We decline to infer that Vasquez intended to injure or defraud, as the Court of Appeals did, because to do so would alleviate the State's burden of proving

every element of the charged offense beyond a reasonable doubt. Accordingly, we reverse the Court of Appeals and remand with instructions to vacate Vasquez's conviction for forgery.

FACTS AND PROCEDURAL HISTORY

On July 28, 2010, Timothy Englund, a Yakima Safeway store security guard, saw Vasquez take lotion off a shelf and squirt some onto his hands. Vasquez then put the lotion bottle back on the shelf and went to the front of the store to browse the movie selection. When Vasquez exited the store, Englund contacted him and asked him to accompany Englund to the store's management office to fill out shoplifting paperwork for using the lotion. Vasquez cooperated.

As part of the standard security procedure, Englund patted Vasquez down for weapons and to look for a form of identification. During the pat-down, Englund found Vasquez's wallet, which he removed from Vasquez's pocket and opened. Englund found a social security card and a permanent resident card inside the wallet.

Englund asked Vasquez to recite the social security number on the social security card; Vasquez was unable to do so. Englund also asked if the cards belonged to Vasquez, to which Vasquez responded affirmatively. When Englund asked where Vasquez obtained the cards, Vasquez said that he had purchased both the social security and permanent resident cards from a friend in California for $50 each. Vasquez also told Englund that he came from California to Yakima to stay with friends or family and might have told Englund that he was working in the area.

Englund proceeded to fill out paperwork pertinent to the shoplifting incident. The paperwork included a statement that Englund had found a permanent resident

2

card and a social security card and that Vasquez had wrongly used the lotion. At some point while he was filling out the paperwork, Englund sought the assistance of a Spanish-speaking employee to ensure that Vasquez understood the forms, given several confused responses from Vasquez. On the form Vasquez signed, Vasquez indicated that he was not currently employed.

Because Englund could not verify Vasquez's identity, he called the police department per standard store protocol. Police arrested Vasquez and the State charged him with two counts of forgery.

In addition to Englund's testimony, the State presented witnesses from the Social Security Administration and United States Immigration and Customs Enforcement. These witnesses testified that Vasquez had never been issued a social security card, that a social security card was necessary to obtain employment in the United States, that a search in the legal permanent residents database under Vasquez's name and date of birth disclosed no results, and that the permanent resident card in Vasquez's possession did not contain the security features of authentic cards. The trial court excluded any direct evidence of Vasquez's immigration status.

At the close of the State's case, Vasquez moved to dismiss on sufficiency of the evidence grounds, which the trial court denied. The defense then rested, deciding not to present any testimony. A jury found Vasquez guilty of two counts of forgery and Vasquez appealed.

The Court of Appeals affirmed Vasquez's conviction, reasoning that there was enough evidence to infer that Vasquez possessed the cards with an intent to injure

or defraud, asking rhetorically, "why else would Mr. Vasquez have them." *State v. Vasquez*, 166 Wn. App. 50, 53, 269 P.3d 370 (2012). In addition, the Court of Appeals determined that the fact Vasquez might have told Englund that he had worked in the area sufficed to demonstrate that Vasquez had used the cards to injure or defraud an employer. We granted review. *State v. Vasquez*, 174 Wn.2d 1017, 282 P.3d 96 (2012).

## ANALYSIS

We review the sufficiency of the evidence to prove the elements of an offense by asking ""whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."" *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999) (emphasis omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979))).

The Court of Appeals applied the incorrect standard of review when it stated that "the evidence of intent to defraud [was] substantial when [it] consider[ed] the reasonable inferences available to the jury." *Vasquez*, 166 Wn. App. at 52. We have rejected a substantial evidence standard in determining the sufficiency of the evidence because it does not require proof beyond a reasonable doubt. *See Green*, 94 Wn.2d at 221-22.

We conclude that the record before us discloses insufficient evidence to prove Vasquez's intent to injure or defraud beyond a reasonable doubt. First, the Court of Appeals' rhetorical question, "And here why else would Mr. Vasquez have them,"

*Vasquez*, 166 Wn. App. at 53, infers intent from mere possession. Such an inference relieves the State of its burden to prove all elements of the crime of forgery beyond a reasonable doubt. As various cases make clear, possession alone does not support an inference of intent. Second, although Vasquez might have acknowledged ownership of the forged cards, the evidence is equivocal as to whether Vasquez intended to defraud Englund by convincing him that the cards were genuine. Equivocal evidence cannot form the basis of an inference of intent to injure or defraud. Finally, Englund's shaky recollection of Vasquez's statement from working in the area does not support an inference that Vasquez used forged cards in connection with employment. Beyond Englund's scant testimony, the State presented no evidence that Vasquez had ever worked, was working, intended to seek work in the area, or had ever used the forged cards in any way. Because the evidence presented in this case is insufficient to demonstrate Vasquez's intent to injure or defraud, we reverse the Court of Appeals and remand to vacate Vasquez's conviction.

I.  The State must prove intent to injure or defraud as an essential element of the crime of forgery—possession alone is not enough

Washington's forgery statute provides in pertinent part that "[a] person is guilty of forgery if, with intent to injure or defraud: . . . He or she possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged." RCW 9A.60.020(1)(b). "Whenever an intent to defraud shall be made an element of an offense, it shall be sufficient if an intent appears to defraud any person, association or body politic or corporate whatsoever." RCW 10.58.040.

When intent is an element of the crime, "intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability." *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991). Though intent is typically proved through circumstantial evidence, "[i]ntent may not be inferred from evidence that is 'patently equivocal'." *Id.* at 592 (quoting *State v. Bergeron*, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985); *State v. Couch*, 44 Wn. App. 26, 32, 720 P.2d 1387 (1986)). Possession alone is not sufficient to infer intent to injure or defraud in forgery cases, but possession together with "slight corroborating evidence" might be. *State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993); *see also State v. Ladely*, 82 Wn.2d 172, 175, 509 P.2d 658 (1973); *State v. Tinajero*, 154 Wn. App. 745, 750, 228 P.3d 1282 (2009).

A. *In possession-with-intent crimes, we do not draw inferences of intent based on mere possession*

For other crimes where possession and intent are elements of the crime, Washington courts do not permit inferences based on naked possession. Rather, this court and the Court of Appeals have consistently required the State to prove intent beyond a reasonable doubt.[1]

Recently, in *State v. Brockob*, 159 Wn.2d 311, 318, 330-31, 150 P.3d 59 (2009), we considered whether a defendant who removed cold tablets containing pseudoephedrine from packaging and placed the tablets into his pockets acted with

---

[1] The legislature has defined inferences that may arise in some crimes, *e.g.*, RCW 9A.46.110(4), 9A.52.040, 9A.52.060(1), 9A.56.096(1), 66.44.170, 77.15.650(2), but has not established any inference of intent arising from the possession of forged documents.

the requisite intent to manufacture methamphetamine. We answered no, determining that the State merely proved an intent to shoplift pseudoephedrine in excess of the legal purchase limit. *Id.* at 331. In other words, we held that the "mere assertion that [pseudoephedrine] is *known to be used* to manufacture methamphetamine does not necessarily lead to the logical inference that Brockob intended to do so, without more." *Id.* at 331-32.

The Court of Appeals has employed the same analysis in reviewing convictions for possession of a controlled substance with intent to deliver, consistently holding that bare possession of a controlled substance does not suffice to support an inference of intent. For example, in *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010), the Court of Appeals noted, "Mere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver"; rather, "[a]t least one additional fact must exist, such as a large amount of cash or sale paraphernalia, suggesting an intent to deliver." Because O'Connor had a large quantity of marijuana, a sophisticated grow operation, and a scale, the court held that these facts "support[ed] an intent-to-deliver inference to convict." *Id.* at 291.

Several other Court of Appeals cases support the rule that mere possession of a controlled substance does not suffice, on its own, to support an inference of intent to deliver. *See, e.g., State v. Campos*, 100 Wn. App. 218, 222, 998 P.2d 893 (2000) ("A police officer's opinion that a defendant possessed more drugs than normal for personal use is insufficient to establish intent to deliver."); *State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995) ("[E]ven possession of a large amount

of controlled substances, without some additional factor, is insufficient to establish intent."), *abrogated on other grounds by State v. Adel*, 136 Wn.2d 629, 640, 965 P.2d 1072 (1998); *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995) ("[E]vidence of an intent to deliver must be sufficiently compelling that '"the specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability."'" (quoting *State v. Kovac*, 50 Wn. App. 117, 120, 747 P.2d 484 (1987) (quoting *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980))).

Just as mere possession of a controlled substance does not support an inference of an intent to deliver or manufacture, neither does mere possession of forged identification cards support an inference of an intent to injure or defraud.

*B. Both out-of-state and Washington authority requires evidence of intent to defraud beyond mere possession in the forgery context*

Several non-Washington courts that have considered similar statutes have refused to infer intent from mere possession of a forged instrument. These cases hold that such inferences would conflate knowing possession with intent to defraud, thus writing the intent-to-defraud element out of the criminal statute. These cases support the proposition that the State must separately prove intent to injure or defraud beyond a reasonable doubt.

Two New York cases are particularly helpful. In *People v. Bailey*, 13 N.Y.3d 67, 69, 915 N.Ed.2d 611, 886 N.Y.S.2d 666 (2009), the defendant was arrested for attempting to pickpocket several patrons in midtown Manhattan restaurants. When Bailey was searched following arrest, officers found three counterfeit $10 bills in his

pocket. *Id.* Bailey was subsequently charged with criminal possession of a forged instrument, which required an intent to defraud. *Id.* at 69-70 (noting charge made under MCKINNEY'S PENAL LAW § 170.30). The trial court found the evidence legally sufficient, asking, "'[w]hy would Bailey, already embarked upon a brazen effort to commit theft, carry currency in his pocket that he knew to be bogus unless his plan was to pass it off to an unsuspecting storekeeper, newsvendor, or fast food worker?'" *Bailey*, 13 N.Y.3d at 70 (alteration in original). The Court of Appeals reversed, rejecting that an inference of intent to defraud could be drawn based on Bailey's "presence in a shopping district, his possession of counterfeit bills, and his larcenous intent." *Id.* at 72. Otherwise, noted the court, lower courts would "effectively strip[] the element of intent from the statute and criminalize[] knowing possession." *Id.*

Similarly, in *People v. Brunson*, 66 A.D.3d 594, 595, 888 N.Y.S.2d 22 (2009), the "defendant possessed a state identity card on which a letter in defendant's name and a digit in his identification number had been altered." The card was taken from the defendant in a search by security guards following a shoplifting incident. *Id.* The defendant was charged with criminal possession of a forged instrument in the second degree, which required the State to prove intent to defraud. *Id.* Because the card was only found in the defendant's possession, the court held that the "[d]efendant's knowing possession of the forged card was not sufficient to prove intent, and he engaged in no conduct evincing an intent to use it." *Id.* The court also refused to engage in speculation that the defendant intended to use the card to misrepresent his identity in the event of his arrest. *Id.*

9

The Georgia Court of Appeals has come to the same conclusion. In *Velasquez v. State*, 276 Ga. App. 527, 623 S.E.2d 721, 724 (2005), police arrested the defendant for driving without a license. During a search incident to arrest, officers found a forged North Carolina identification card. *Id.* The State charged Velasquez with second degree forgery, a crime that specifically requires an intent to defraud. *Id.* at 723. The court noted that "[i]ntent to defraud is most commonly proved by showing delivery or use of the writing, or some other associated writing." *Id.* Without such evidence, the court opined,

> When stopped by the police, Velasquez did not present the North Carolina identification card; it was only found in a search of his person after his arrest. The State did not show that Velasquez had ever presented the identification card to anyone at any time; all that was shown was mere possession.

*Id.* at 724.

In *People v. Miralda*, 981 P.2d 676, 677 (Colo. Ct. App. 1999), an officer making a traffic stop shone a light on a passenger's wallet as the passenger rummaged through it, seeing a resident alien card. The officer pointed to the card and stated "green card," to which the defendant responded by handing the officer the card. *Id.* The card was forged and a later inventory search disclosed a forged social security card. *Id.* The State charged the defendant with possessing and uttering a forged document, arguing that the act of handing the card over to the officer upon demand constituted an intent to defraud. *Id.* The court overturned the defendant's conviction, noting that while intent may be established from circumstantial evidence and reasonable inference, no circumstances established more than mere possession. *Id.* at 679. Furthermore, the court stated,

There was no proof that defendant had ever used either of the cards for any purpose (such as support for a job application), nor was there any proof that defendant's status was such that it could be inferred that he would be required to use either instrument to misrepresent that status.

*Id.*

These out-of-state cases are consistent with Washington authority. In Washington, where an intent to injure or defraud has been proved, the defendants actually demonstrated intent to pass off their forged documents as authentic. In *Esquivel*, the defendants presented false identification upon the request of police officers, showing that they intended to defraud police officers by passing forged documents off as true. 71 Wn. App. at 869. In *State v. Tinajero*, 154 Wn. App. 745, 748, 228 P.3d 1282 (2009), the defendant had presented his false identification to his employer in order to obtain employment. Because the defendants in *Tinajero* and *Esquivel* actually presented their forged documents in hopes of defrauding law enforcement officers or employers, the Court of Appeals found satisfactory evidence of intent to injure or defraud. *Esquivel*, 71 Wn. App. at 872; *Tinajero*, 154 Wn. App. at 750. Like several of our sister states, Washington courts have never held that bare possession suffices to support an inference of intent to injure or defraud.

C. *Vasquez's possession of forged cards alone does not show an intent to injure or defraud*

Consistent with both Washington and out-of-state law, the State did not demonstrate that Vasquez acted with the requisite intent to injure or defraud. Here, the forged cards were only found in Vasquez's possession. The fact that a security officer pulled the cards out of Vasquez's wallet does not suffice to infer an intent to injure or defraud. No rational juror could find otherwise.

The Court of Appeals affirmed Vasquez's conviction for forgery based on bare possession. It believed that as a matter of logical probability, "the unexplained possession of a forged instrument makes out a prima facie case of guilt against the possessor . . . ." *Vasquez*, 166 Wn. App. at 53. The Court of Appeals went on to ask, "And here why else would Mr. Vasquez have them," noting that "the only value of the cards would be to falsely represent Mr. Vasquez's right to legally be in the country." *Id.* This holding whisks away the State's burden to prove intent to injure or defraud beyond a reasonable doubt, an essential element of the crime of forgery. RCW 9A.60.020(1)(b). It presumes that persons who possess knowingly forged documents, and particularly forged immigration documents, intend to injure or defraud by virtue of possession alone. We reject the appellate court's reasoning and hold that the mere possession of forged documents, without evidence of an intent to injure or defraud, cannot sustain a forgery conviction.

Amicus Curiae Washington Association of Prosecuting Attorneys (WAPA) contends that if we were to vacate Vasquez's conviction, we would be grafting a "use" requirement onto the crime of forgery. *See* Br. of Amicus WAPA at 9-11. In other words, amicus WAPA would not require Vasquez to actually use the forged documents but only to intend to injure or defraud by possessing them. We agree with amicus WAPA's general proposition that actual use of forged documents is not required to demonstrate an intent to injure or defraud. But unexplained possession of a forged document is not circumstantial evidence that supports an inference of such intent. Rather, we hold that the State must set forth some evidence beyond

naked possession to prove a defendant's intent to injure or defraud beyond a reasonable doubt. The State failed to do so in this case.

II.  **The evidence the State presented is patently equivocal as regards Vasquez's intent to injure or defraud**

We do not infer criminal intent from evidence that is patently equivocal. *Bergeron*, 105 Wn.2d at 20; *Woods*, 63 Wn. App. at 592. Rather, inferences of intent may be drawn only "from conduct that plainly indicates such intent as a matter of logical probability." *Bergeron*, 105 Wn.2d at 20. Vasquez's answers to Englund's questions about the forged cards demonstrate ambiguity as to whether Vasquez intended to defraud Englund. As such, they are patently equivocal and do not support an inference of intent to injure or defraud.

From the record before us, it is unclear whether Vasquez intended to convince Englund that the social security and permanent resident cards were genuine or whether Vasquez was merely acknowledging his ownership of the cards. Englund's testimony demonstrates this ambiguity:

> Q.  When you first took the cards out of the wallet and thought that were his ID, did the defendant make any comments about those ID?
>
> A.  Other than me asking if this is his identity. Once I pull something out of a wallet, I always ask if it's their identity or their social security card.
>
> Q.  And what did he respond?
>
> A.  He said, yes.

2 Verbatim Report of Proceedings at 48-49. From this testimony, Vasquez could have been responding that the cards were his or that the cards properly identified

him by name; on the other hand, Vasquez could have been attempting to convince Englund that the cards were genuine. It is not clear. The redirect examination of Englund reveals similar ambiguities:

Q. Now, also you indicated before that at first he stated the cards were his cards when you first obtained the cards.

A. Correct.

Q. How did he state that? What did he say to you?

A. I asked the question if this is his identity or his card. He replied, yes.

Q. Did you—were you talking about both cards or just the social security card?

A. Both cards, correct.

*Id.* at 76. Again, Englund's testimony is unclear as to whether Vasquez meant to respond that he simply owned the cards or meant to persuade Englund that the cards were his legitimate social security and permanent resident cards. Englund's testimony does not indicate precisely what Vasquez meant. It is therefore patently equivocal evidence and cannot serve as a basis for inferring Vasquez's intent to injure or defraud.

The ambiguity of the exchange between Englund and Vasquez is exacerbated by an apparent language barrier. Although Englund testified that Vasquez appeared to understand his questions and responded in English, Englund also stated that Vasquez had given several confused responses to his questions. Indeed, for this reason, Englund believed it was necessary to involve a Spanish-speaking employee

in his communications with Vasquez. The language barrier between Vasquez and Englund casts further doubt on whether Vasquez intended to defraud Englund.

Furthermore, Vasquez did not behave as someone who intended Englund to be defrauded by the forged cards. When Englund asked where Vasquez obtained the cards, Vasquez freely told Englund that he got the cards for $50 each from a friend in California. Vasquez's ready admission that the cards were fakes belies an inference that Vasquez intended to defraud Englund. In short, the record here is not clear as to whether Vasquez intended to defraud Englund. Such patently equivocal evidence cannot give rise to an inference of an intent to injure or defraud. *Bergeron*, 105 Wn.2d at 19-20. Accordingly, we hold that this evidence was insufficient to convince a rational juror that Vasquez acted with intent to injure or defraud beyond a reasonable doubt.

III.   The tenuous evidence that Vasquez was working is insufficient to support the contention that Vasquez used forged documents to obtain work

The Court of Appeals held that since Vasquez might have mentioned to Englund that he had worked in the area, the jury could infer that he possessed forged documents with an intent to injure or defraud a third party. *Vasquez*, 166 Wn. App. at 53. Such generalized intent to injure or defraud may be shown if "an intent appears to defraud any person, association or body politic or corporate whatsoever," RCW 10.58.040, and may also be inferred by the facts and circumstances that demonstrate intent as a matter of logical probability, *see Bergeron*, 105 Wn.2d at 4. However, inferences based on circumstantial evidence must be reasonable and cannot be based on speculation. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.

Ct. 2781, 61 L. Ed. 2d 560 (1979) (holding that triers of fact may draw only reasonable inferences); *Bailey v. Alabama*, 219 U.S. 219, 31 S. Ct. 145, 55 L. Ed. 191 (1911) ("To justify conviction, it was necessary that this intent [to injure or defraud] should be established by competent evidence, aided only by such inferences as might logically be derived from the facts proved, and should not be the subject of mere surmise or arbitrary assumption."). We hold that there was insufficient evidence to demonstrate Vasquez's intent to injure or defraud a third party because the record discloses no evidence that Vasquez had worked in the United States or that he had used the forged cards in connection with employment.

Though Englund testified that Vasquez said he had worked in the area, Englund also indicated that he could not remember exactly what Vasquez said. On the shoplifting forms, Vasquez specified that he was not currently working. Aside from Englund's equivocal comment that Vasquez mentioned he had worked, the State presented no other evidence that Vasquez had sought work, was working, or planned to work in the area. Neither did the State offer any evidence suggesting that Vasquez had used the forged social security and permanent resident cards to obtain employment or for any other purpose. Englund's uncertain memory of what Vasquez stated with regard to working was insufficient to support a reasonable inference that Vasquez intended to defraud an employer with the forged cards.

Even if we assume that Vasquez was employed in the United States, there is no evidence that Vasquez used these specific forged cards to obtain employment. Conjecture about how or whether Vasquez used the specific cards Englund found does not support a reasonable inference that Vasquez possessed these cards with

16

an intent to injure or defraud. We conclude that this evidence was insufficient to support the jury's finding that Vasquez acted with intent to injure or defraud beyond a reasonable doubt.

## CONCLUSION

The Court of Appeals' holding assumes that the only reason a person possesses forged documents is because he or she intends to injure or defraud someone. But by requiring proof of intent to injure or defraud, the legislature has determined that mere possession of forged documents is not enough to sustain a forgery conviction. Rather, as courts both in- and outside Washington have held, the State must prove intent to injure or defraud beyond a reasonable doubt. The evidence that the State presented to demonstrate intent to injure or defraud was not sufficient because it either was patently equivocal or based on rank speculation. Thus, even when viewing the evidence in this case in the light most favorable to the State, we conclude that no rational juror could have found an intent to injure or defraud beyond a reasonable doubt. Accordingly, we reverse the Court of Appeals and remand with instructions to vacate Vasquez's convictions for forgery.

No. 87282-1

Wiggins, J.

WE CONCUR.

Madsen, C.J.

Johnson, J.

Owens, J.

Fairhurst, J.

J.M. Johnson, J.

González, J.

Stephens, J.

Dwyer, J.P.T.

18