# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51118-5-II |
| Respondent, | |
| v. | |
| ERIC SANTIAGO ROMERO LEMUS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Eric Santiago Romero Lemus appeals from his jury trial convictions for nine counts of second degree identity theft and three counts of forgery.[1] He argues that the evidence is insufficient to support these convictions. He also argues that under the recent amendments to RCW 36.18.020(2)(h),[2] we must strike the criminal filing fee imposed by the trial court. We affirm the convictions, but we remand for the trial court to strike the interest provision on Romero Lemus's legal financial obligations (LFOs) and to determine whether the criminal filing fee can be imposed under RCW 36.18.020(2)(h).

---

[1] Romero Lemus was also convicted of one count of second degree possession of stolen property. He does not challenge that conviction on appeal.

[2] *See* Laws of 2018, ch. 269, § 17.

FACTS

I. Background

On March 23, 2017, Pierce County Deputy Sheriffs Chad Helligso and Chris Olson stopped Romero Lemus shortly after he left the parking lot of a Wells Fargo bank because his car had a cracked windshield. At the time of the stop, Romero Lemus's brother Francisco Romero Lemus was in the passenger's seat. After arresting Romero Lemus for driving with a suspended license, Deputy Olson searched Romero Lemus's wallet and found two checks and what appeared to be two credit cards that did not belong to Romero Lemus.

The first check, check number 526, was drawn on James and Sandra Bunting's Wells Fargo bank account. Ex. 3A. This check was made out to Jesus Zuniga Lemus, dated March 16, and appeared to have been signed by "Sandra Bunting." The second check, check number 280, was drawn on Sandra Bunting's KeyBank account. This check was made out to Jesus Zuniga Lemus, dated March 21, and appeared to have been signed by "Sandy Bunting."

The first card was a "VA Equity 100 VA Home Loan" card in the name of Greg Berntsen. Ex. 5; 3 Report of Proceedings (RP) at 232. The second card was an Amazon Prime Visa card in the name of Eric R. Jensen.

Romero Lemus told the deputies that he had found the cards at a casino a few days earlier. And, despite the two checks being dated within days of the arrest, Romero Lemus told the deputies that his brother "Jesus" gave him the checks "several weeks prior." 3 RP at 240-41; 4 RP at 294. Romero Lemus could not explain why the dates on the checks were inconsistent with his assertion that his brother had given him the checks several weeks earlier.

With Romero Lemus's permission, Deputy Olson also searched Romero Lemus's car. Between the center console and the front passenger's seat, Deputy Olson found a receipt for a deposit at a Wells Fargo bank and another check. He also found two red plastic folders in the car's passenger compartment.

The receipt was dated March 23, and time stamped about an hour before the deputies stopped Romero Lemus. The receipt included a photograph of check number 274 drawn on Sandra Bunting's KeyBank account. The check was issued to a "James Jones," dated March 20, 2017, and appeared to have been signed by "Sandra Bunting." Romero Lemus told the deputies that he was not the one who had made this deposit, but he refused to say who had made the deposit.

The check that was found in the car, check number 275, was also from Sandra Bunting's KeyBank account. It was dated March 20, was made out to "James Jones," and appeared to have been signed by "Sandy Bunting." Romero Lemus told the deputies that his brother Jesus had left check number 275 at his (Romero Lemus's) house before moving to Mexico a month earlier. Once again, Romero Lemus could not explain why the check was dated more recently.

According to Deputy Helligso, after the deputies found the two red folders, Romero Lemus said "that his brother left all of that stuff in [Romero Lemus's] vehicle, and his brother had a history of [identity] theft and fraud." 3 RP at 242-43. Romero Lemus also stated that "he should have known better than to have that stuff in his vehicle" and that he thought the items in the vehicle "were stolen items." 3 RP at 243.

The deputies later examined the items in each of the two folders. The first folder, Exhibit 1, contained various financial and medical documents related to Romero Lemus. In addition, it contained several documents belonging to Greg and Elizabeth Berntsen, including:

- Bank statements.

- A pre-approval notification letter addressed to Greg Berntsen's from Freedom Mortgage that had previously included a "VA Equity 100 card" that would verify Berntsen's preapproval. This notification letter matched the information on the VA Equity card found in Romero Lemus's wallet, and the letter appeared to have originally had a card attached to it.

- "[A]n invitation to apply for a Delta Sky Miles credit card." Ex. 11-C; 3 RP at 250.

In the second folder, Exhibit 2, the deputies found more financial and medical information related to Romero Lemus. They also found some items bearing Francisco's[3] name. The second folder also contained numerous documents belonging to other people, including:

- "[A]n empty envelope addressed to somebody named Bunting" from Comcast. Ex. 2-4; 3 RP at 258-59.

- A Pierce County property tax statement addressed to Douglas Harbaugh.

- Two property tax payment slips addressed to Douglas Harbaugh.

- Various documents from the Wounded Warrior Project addressed to David Calhoun.

- "[A] special notice from Medicare insurance addressed to a David Calhoun." 3 RP at 264.

- A bank notice addressed to Daniel and Suzanne Calhoun.

- A credit union statement addressed to a Sara N. Smith.

- Bank statements addressed to James H. Harmon.

- Bank statements addressed to Sue and Steven Nichols.

## II. PROCEDURE

The State charged Romero Lemus with nine counts of second degree identity theft, three counts of forgery, and three counts of second degree possession of stolen property. The case proceeded to a jury trial.

---

[3] Because the appellant and Francisco share the same last name, we refer to Francisco by his first name to avoid confusion. We intend no disrespect.

A. TRIAL

1. STATE'S WITNESSES

The deputies testified to the facts described above. Additionally, Sarah Smith, Eric Jensen, David Calhoun, James Bunting, Sandra Bunting, Douglas Harbaugh, Sue Nichols, James Harmon, and Greg Allen Berntsen, Sr. testified for the State.

Each of the civilian witnesses identified and testified about the various financial documents, checks, and credit cards in their names that were found on Romero Lemus's person or in his car. None of these witnesses knew Romero Lemus or gave him permission to possess any of the documents, checks, or credit cards at issue. Sandra Bunting specifically testified that she had not written or signed the check depicted on the deposit receipt or the signed checks that the deputies found in Romero Lemus's wallet or car.

2. DEFENSE WITNESSES

Romero Lemus's mother testified that in February 2017, she was living with her four sons, Jorge Mariano Bernardino, Salvador Romero Lemus, Francisco, and Romero Lemus. She further testified that when Bernardino moved out of her house the first part of March, he left a red folder in the trunk of Romero Lemus's car.

Romero Lemus's mother also testified that when she subsequently cleaned out Bernardino's room, which he had previously kept locked, she found documents and paperwork belonging to family members and to people who did not live in her home. Some of these documents belonged to David Calhoun, Douglas Harbaugh, Eric Jensen, and Sarah Smith. Romero Lemus's mother also testified that Romero Lemus did not help clean out the room. Jordyn Fox,

Romero Lemus's girlfriend, also testified that she had helped clean out the room and that they found a lot of paperwork, including bank statements, belonging to other people.

Romero Lemus testified that immediately before his arrest, he had taken Francisco to use an automatic teller machine at a Wells Fargo bank branch. Romero Lemus stated that Francisco had returned to the car with a "piece of paper," but Romero Lemus did not see what was on the paper. 7 RP at 538.

Romero Lemus admitted that he had the two checks and two credit cards in his wallet when he was arrested and testified that he told the deputies he found the cards at a casino. But he further testified that he had actually found the items in his wallet among other documents in a "storage" room/unit at his house a couple of days after Bernardino left. 7 RP at 542-43, 546. Romero Lemus stated that he had put these four items in his wallet because he had intended to show them to his mother and to talk with her about his brother. Romero Lemus admitted, however, that he had not talked to his mother about the items in his wallet.

Romero Lemus further testified that there were other documents, including documents of family members, with the checks and credit cards that he removed and that he put these documents in one of the folders and had planned to sort through them later. He admitted to putting one of the folders in his car, but he testified that did not know the second folder was in his car or know how it got there. He also testified that he did not know about the check found between the passenger's seat and the center console until the State told him about it.

Romero Lemus denied planning to obtain money using any of the items found in his car and denied telling the deputies that he believed the items in his car were stolen. He also denied using the name Jesus Zuniga Lemus, but he testified that he had a cousin with this name.

3. VERDICT AND SENTENCING

The jury found Romero Lemus guilty of the nine counts of second degree identity theft and the three counts of forgery.

At sentencing the trial court waived all nonmandatory legal fees, but it imposed a $200 criminal filing fee. The judgment and sentence also stated that interest on the LFOs would "bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments." Clerk's Papers (CP) at 145.

The trial court also found that Romero Lemus was indigent for purposes of appeal. The trial court did not, however, say under what subsection of RCW 10.101.010(3) it found Romero Lemus indigent. Nor does the order of indigency indicate what subsection of RCW 10.01.010(3) the trial court relied on.

Romero Lemus appeals.

ANALYSIS

Romero Lemus argues that the evidence was insufficient to support the second degree identity theft and forgery convictions. He also argues that under RCW 36.18.020(h), we must strike the criminal filing fee imposed by the trial court.

Romero Lemus's sufficiency arguments fail. But we remand for the trial court to strike the interest provision from Romero Lemus's judgment and sentence and to determine whether the criminal filing fee can be imposed under RCW 36.18.020(h).

## I. SUFFICIENCY

### A. LEGAL PRINCIPLES

When reviewing the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that the State proved the crime's essential elements beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We assume that all of the State's evidence and any reasonable inferences from it are true, and all reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *Homan*, 181 Wn.2d at 106.

Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). And we defer to the jury to resolve issues of conflicting testimony and determining the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

### B. SECOND DEGREE IDENTITY THEFT CONVICTIONS

To prove second degree identity theft, the State had to prove that (1) Romero Lemus "*knowingly* obtain[ed], possess[ed], use[d], or transfer[ed] a means of identification or financial information of another person, living or dead," and (2) he did so "with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1) (emphasis added). Romero Lemus argues that the evidence was insufficient to support the second degree identity theft convictions because the State failed to prove that he (1) *knowingly* obtained or possessed the documents other than the items that were found in his wallet, or (2) possessed any of these items with intent to commit a crime.

1. KNOWLEDGE

Romero Lemus argues that the evidence was insufficient to establish that he knew that he possessed the documents found in the folders, because he testified that he had not gone through the folder he asserts that he found in the storage unit and he was unaware of the other folder found in his car. But this argument fails to consider the evidence in the light most favorable to the State. *See Homan*, 181 Wn.2d at 106.

A person has knowledge if "he or she is aware of a fact." RCW 9A.08.010(b)(i). The evidence here is sufficient to show that Romero Lemus was aware of the documents that were found in each of the two folders.

As to the first folder, Exhibit 1, Romero Lemus's assertion that he did not go through this folder is not supported by the record. In fact, Romero Lemus identified the documents and testified that he had gone through this folder, "saw documents that were in [his] name," removed the items to show his mother, and that those items were the ones found in his wallet. 7 RP at 543-44. Additionally, this folder contained financial information belonging to Berntsen that related directly to one of the cards in Romero Lemus's wallet as well as the documents belonging to Romero Lemus. Based on these facts, a rational trier of fact could conclude that Romero Lemus not only possessed the first folder because it contained some of his own documents, but that he had gone through its contents and was aware of the nature of its contents. Therefore, a rational trier of fact could conclude that Romero Lemus knowingly possessed the documents in that folder.

Romero Lemus's assertion that he was unaware of the existence or contents of the second folder is equally unavailing. The second folder contained an envelope related to the Buntings. It also contained documents belonging to Romero Lemus. As with the first folder, taking this

evidence in the light most favorable to the State, the fact that the second folder contained documents belonging to Romero Lemus would allow a rational trier of fact to conclude that Romero Lemus owned that folder. And the fact that Romero Lemus had actual possession of items related to the owners of an item found in the second folder would allow a rational trier of fact to conclude that Romero Lemus was aware of the folder's contents. Thus, Romero Lemus's claim that the evidence of knowledge was insufficient fails.

## 2. INTENT TO COMMIT A CRIME

Romero Lemus next argues that the evidence was insufficient to support the second degree identity theft convictions because it did not show that he possessed the documents with intent to commit a crime.[4] Again, we disagree.

Our Supreme Court has held that for "crimes where possession and intent are elements of the crime, Washington courts do not permit inferences based on naked possession." *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). "When intent is an element of the crime, 'intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *Vasquez*, 178 Wn.2d at 8 (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)). Possession alone is not, however, sufficient to infer intent. *Vasquez*, 178 Wn.2d at 8. But "possession together with 'slight corroborating evidence'" can be. *Vasquez*, 178 Wn.2d at 8 (quoting *State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993)). Such corroborating evidence is present here.

---

[4] Identity theft requires the possession or use of a means of identification of another person "with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1).

Here, the sheer volume of personal and financial documents belonging to several different individuals who did not know Romero Lemus and who had not authorized him to possess these documents strongly suggests an intent to commit a crime. And the fact that someone who had been in Romero Lemus's vehicle had deposited one of Sandra Bunting's checks, a check that she had not written or signed, also suggests an intent to commit a crime and Romero Lemus's connection to that crime. This evidence would allow a rational trier of fact to conclude beyond a reasonable doubt that Romero Lemus possessed these documents with an intent to commit a crime. Accordingly, Romero Lemus fails to show that the evidence was insufficient to prove intent to commit a crime.

C. FORGERY CONVICTIONS

Romero Lemus next argues that the evidence is insufficient to support the forgery convictions because the State failed to prove that he intended to injure or defraud anyone. Again, we disagree.

As noted above, although possession of the forged documents "alone is not sufficient to infer intent to injure or defraud in forgery cases, . . . possession together with 'slight corroborating evidence' might be." *Vasquez*, 178 Wn.2d at 8 (quoting *Esquivel*, 71 Wn. App. at 870). Here, Romero Lemus's possession of the forged checks coupled with the receipt for the deposit of a similarly forged check is sufficient evidence to allow a rational trier of fact to conclude beyond a reasonable doubt that Romero Lemus intended to injure or defraud someone. Thus, Romero Lemus's sufficiency arguments fail.

No. 51118-5-II

## II. CRIMINAL FILING FEE

Finally, Romero Lemus argues that under the current version of RCW 36.18.020(2)(h), we must strike the criminal filing fee imposed by the trial court. The State concedes that the current version of RCW 36.18.020(2)(h) applies, and it also asserts that we must strike the interest provision in the judgment and sentence under RCW 10.82.090(1).

In 2018, the legislature amended RCW 10.82.090(1) and RCW 36.18.020(2)(h). LAWS OF 2018, ch. 269 §§ 1, 17. As relevant here, these amendments eliminated interest on non-restitution LFOs and prohibited imposing the filing fee on defendants found indigent under RCW 10.101.010(3) (a) through (c). RCW 10.82.090(1), RCW 36.18.020(h); *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). The 2018 amendments apply to this case because this case was not final on June 7, 2018, when the amendments took effect. *Ramirez*, 191 Wn.2d at 747. Accordingly, we remand to the trial court to strike the interest provision and to determine whether the criminal filing fee can be imposed under RCW 36.18.020(2)(h).

CONCLUSION

We affirm the convictions, but we remand for the trial court to strike the interest provision and determine whether the criminal filing fee can be imposed under RCW 36.18.020(2)(h).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

CRUSER, J.