IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON<br><br>    Respondent,<br><br>    v.<br><br>CANDACE MAE OSBORNE,<br><br>    Appellant. | No. 80687-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Over an eight-day period, Candace Mae Osborne cashed five of Paul Trubnikov's business checks, totaling over $4,700. Osborne contended that she did not know the checks belonged to Trubnikov but that she believed the checks belonged to her boyfriend. Following a stipulated bench trial, the court found Osborne guilty of one count of second degree theft and five counts of forgery.

On appeal, Osborne contends that the evidence was insufficient for the court to find that she had the intent to deprive Trubnikov of his property or to defraud him, which the State was required to prove. Because the stipulated evidence, direct and circumstantial, provides for reasonable inferences that support the trial court's findings and conclusions, we disagree. Accordingly, we affirm Osborne's convictions.

FACTS

Trubnikov ordered checks for his business, Pacific Granite Inc., to be delivered through the mail to his home in Ferndale, Washington. However,

Citations and pin cites are based on the Westlaw online version of the cited material.

Trubnikov never received the checks.

Between February 8 and February 16, 2018, Osborne cashed five of the missing checks at Whatcom Educational Credit Union (WECU): February 8 for $850.00; February 9 for $920.00; February 13 for $986.22; February 14 for $984.54; and February 16 for $983.54. WECU provided photographs of the individual who deposited or cashed the checks, and the woman in the photographs appeared to be the same woman in Osborne's driver's license photograph. The total amount of attempted fraud was $4,724.30. The checks show various signatures, with the last check more clearly signed "Paul."

Around February 18, 2018, Trubnikov's wife was notified that Clinton Berry had cashed one of the missing checks in another jurisdiction, while carrying additional missing checks. Skagit County Sheriff's Department apprehended Berry, who was identified as Osborne's boyfriend, and Osborne. Deputy Steven Gonzales found checks on Osborne as well.

On February 22, 2018, Trubnikov reported to the Ferndale Police Department that his blank checks had been stolen from his residence mailbox. Trubnikov signed an affidavit of forgery for each cashed check, acknowledging that the checks were paid to Osborne. He stated that his signature was "subscribed/altered" by someone other than himself without his knowledge or permission. Police Officer Frank Spane investigated the fraud and confirmed with WECU that Osborne cashed four of Trubnikov's checks at the credit union's Ferndale branch and one check at the Birchwood branch in Bellingham. At the time, Skagit County Sheriff Deputy Gonzales notified Ferndale Police

2

Department that he was charging Berry with possession of stolen property in the second degree.

On March 9, 2018, the State charged Osborne with five counts of forgery and one count of theft in the second degree.

On May 8, 2019, Osborne submitted a drug court petition, wherein she agreed to complete treatment evaluation and the evaluation's recommended substance abuse treatment program. She waived her right to a jury trial and stipulated that, if she was terminated from drug court,

> the law enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, are admissible in the trial to the court and may be considered by the court in its determination of defendant's guilt in regards to each and every element of the charged offense(s).

The court granted Osborne's petition for drug court.

On May 23, 2019, Osborne was sanctioned for violation of the terms and conditions of drug court and committed to the Whatcom County Jail. On September 12, 2019, the court terminated Osborne from drug court due to noncompliance.

At the stipulated bench trial, the court concluded "beyond a reasonable doubt that Ms. Osborne knew that those were not checks that were written to her, and chose to deposit them knowing that they were not -- that those checks were not checks that Mr. Trubnikov or anyone else had provided to her for any reason."

Following the bench trial, the court entered, among other findings, the following findings of fact:

3

6. Ms. Osborne argued that she did not know the checks were forged and argued that her boyfriend at the time, Clinton Berry, had given the checks to her and she did not have any way to know that the checks were fraudulent.

7. When Mr. Berry was contacted by the police in Skagit County, he was found to be in possession of some of the checks stolen from Mr. Trubnikov. He was with Ms. Osborne.

8. Mr. Trubnikov told police he did not give the checks to Ms. Osborne and that he did not know her. He also told police that the checks were stolen from his mailbox.

. . . .

10. Ms. Paige argued on behalf of Ms. Osborne that the State failed to prove that Ms. Osborne knew the checks to be forged; however, given that there is no evidence Ms. Osborne knew Mr. Trubnikov and came into the WECU to cash the checks in her own name, the Court finds that there is evidence to overcome any reasonable doubt that Ms. Osborne intended to defraud Mr. Trubnikov and knew each of the checks to be forged.

The court found Osborne guilty as charged. Osborne appeals.

ANALYSIS

Osborne challenges her convictions, contending the State failed to present sufficient evidence to support the court's conclusion that she had the intent to defraud Trubnikov or deprive him of his property. Because the stipulated evidence, including circumstantial evidence, and reasonable inferences therefrom support her convictions, we disagree.

"To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State, and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Stewart, 12 Wn. App. 2d 236, 239, 457 P.3d 1213 (2020). In challenging the sufficiency of the evidence, the defendant "admit[s] the truth of the State's evidence and all reasonable inferences that can be drawn

from it." Stewart, 12 Wn. App. 2d at 240.

"'[F]ollowing a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law.'" Stewart, 12 Wn. App. 2d at 240 (alteration in original) (quoting State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014)). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." Stewart, 12 Wn. App. 2d at 240. "We consider unchallenged findings of fact verities on appeal, and we review conclusions of law de novo." Stewart, 12 Wn. App. 2d at 240.

As an initial matter, Osborne challenges findings of fact 8 and 10. In finding of fact 8, the court found that Trubnikov told police that he did not give the checks to Osborne, that he did not know her, and that the checks were stolen from his mailbox. The evidence supports the court's finding. Specifically, Trubnikov told Office Spane that, despite ordering checks to be delivered to his mailbox, he never received them, and Trubnikov reported the checks stolen. Trubnikov also signed an affidavit of forgery, contending that the checks to Osborne were cashed without his permission. The court reasonably inferred from these facts that Trubnikov did not know Osborne, that he did not give her the checks, and that the checks were stolen from his mailbox. And Osborne presented no evidence to support a different conclusion. Therefore, we conclude that finding of fact 8 was supported by sufficient evidence to persuade a fair-minded, rational juror of its truth.

Finding of fact 10 is a mixed finding of fact and conclusion of law. There,

the court determined that "there is evidence to overcome any reasonable doubt that Ms. Osborne intended to defraud Mr. Trubnikov and knew each of the checks to be forged." The last sentence states the court's conclusion of law regarding the intent element of forgery charges, i.e., that the State presented evidence beyond a reasonable doubt that Osborne intended to defraud Trubnikov. But "[w]here a conclusion of law is erroneously labeled as a finding of fact, we review it de novo as a conclusion of law." State v. Z.U.E., 178 Wn. App. 769, 779 n.2, 315 P.3d 1158 (2014), aff'd, 183 Wn.2d 610, 352 P.3d 796 (2015). Therefore, we review finding of fact 10 de novo, assessing whether the findings of fact support the conclusion that Osborne had the intent required to be convicted of theft in the second degree and forgery.

An individual is guilty of theft in the second degree, if they commit theft of "[p]roperty or services which exceed(s) seven hundred fifty dollars in value but does not exceed five thousand dollars in value." RCW 9A.56.040(1)(a). And "'[t]heft' means: (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive [them] of such property of services." RCW 9A.56.020(1). Under RCW 9A.60.020, "[a] person is guilty of forgery if, with intent to injure or defraud: . . . [they] falsely make[ ], complete[ ], or alter[ ] a written instrument or; . . . [they] possess[ ], utter[ ], offer[ ], dispose[ ] of, or put[ ] off as true a written instrument which [they] know[ ] to be forged." RCW 9A.60.020.

"When intent is an element of the crime, 'intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances

6

plainly indicate such an intent as a matter of logical probability.'" State v. Vasquez, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting State v. Woods, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).  Although "[p]ossession alone is not sufficient to infer intent to injure or defraud in forgery cases, . . . possession together with 'slight corroborating evidence' might be."  Vasquez, 178 Wn.2d at 8 (quoting State v. Esquivel, 71 Wn. App. 868, 870, 863 P.2d 113 (1993)).

There was sufficient evidence, both direct and circumstantial, and reasonable inferences that could be draw therefrom, for the court to conclude beyond a reasonable doubt that Osborne had the intent both to deprive Trubnikov of his property, as required by RCW 9A.56.020(1)(a), and to defraud him, as required by RCW 9A.60.020.  The checks clearly state that they belong to Pacific Granite, which supports the inference that Osborne knew the checks did not belong to Berry.  Additionally, this fact and other evidence support the inference that she knew she was not authorized to deposit the checks.  Specifically, there was no evidence that Osborne knew anyone at Pacific Granite, and Trubnikov did not know her and did not sign the deposited checks.  No one from Pacific Granite wrote the checks to her, and she had rendered no service to Pacific Granite that required payment.  Thus, the reasonable inference is that she knew she was using the property without permission and that she used the checks as if they were a true written instrument, despite knowing that neither she nor Berry had authority to sign the checks.  These reasonable inferences, taken from the stipulated evidence of Osborne's conduct and the surrounding facts and circumstances, plainly indicate, as a matter of logical probability, that Osborne

7

had the intent to defraud Trubnikov and the intent to deprive him of his property. Therefore, we conclude that the trial court did not err when it concluded that the State presented evidence sufficient to prove beyond a reasonable doubt that Osborne had the requisite intent for each crime.[1]

Osborne relies extensively on Vasquez for its proposition that intent may not be inferred based on "naked possession." See 178 Wn.2d at 8. In Vasquez, the State charged Vianney Vasquez with forgery after he was found in possession of forged social security cards. 178 Wn.2d at 4. After trial, a jury found Vasquez guilty, and on appeal, the court concluded that the State provided sufficient evidence of Vasquez's intent because "[w]hy else would Mr. Vasquez have" the forged cards. Vasquez, 178 Wn.2d at 6; State v. Vasquez, 166 Wn. App. 50, 53, 269 P.3d 370 (2012), rev'd, 178 Wn.2d 1. Our Supreme Court concluded that the evidence, including Vasquez's interaction with a security guard following a shoplifting incident, was insufficient to find that Vasquez had the requisite intent because the court cannot "draw inferences of intent based on mere possession." Vasquez, 178 Wn.2d at 8, 15-16. The court reversed the Court of Appeal's decision and vacated Vasquez's conviction. Vasquez, 178 Wn.2d at 18. Here, Osborne not only possessed the checks but cashed them, receiving the payment therefrom and using the money without the knowledge or permission of Pacific Granite or Trubnikov. Accordingly, Osborne's assertion that

---

[1] Because we conclude that there was sufficient evidence for the court to find that Osborne had the requisite intent to defraud Trubnikov and to deprive him of his property, we do not address Osborne's contention that the trial court erred in concluding that she had conceded to the second degree theft charge.

_Vasquez_ controls the outcome here is not persuasive.

    We affirm.

_____

WE CONCUR:

Andrus, A.C.J. _____

_____