FILED
COURT OF APPEALS
DIVISION II

2015 AUG -4 AM 9: 57

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45487-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| LEOVIGILDO PEREZ GUTIERREZ JR., | |
| Appellant. | |

BJORGEN, A.C.J. — A jury found Leovigildo Perez Gutierrez Jr. guilty of forgery, second degree possession of stolen property, and two counts of second degree identity theft, based in part on the acts of an alleged accomplice. Gutierrez appeals the convictions and sentence, contending that (1) insufficient evidence supports the convictions, (2) the deputy prosecutor committed flagrant and ill-intentioned misconduct in closing argument, (3) he received ineffective assistance of counsel, and (4) the sentencing court imposed discretionary legal financial obligations (LFOs) without considering Gutierrez's ability to pay them. We reverse the second degree identity theft conviction arising from Gutierrez's possession of a credit card, affirm his other convictions, and remand for resentencing.

## FACTS

The charges at issue here arose out of a February 2013 incident at Checkmate, a pay day loan business in Fife. Gutierrez arrived at the Checkmate in a vehicle with Jimmy Visario. Visario approached the teller's window while Gutierrez sat in the waiting area.

Visario presented a check made out by Valley Medical Center and gave the teller his identification. The teller remembered Visario from a previous payday loan transaction, in which

he had claimed to work for a different employer. The teller called Valley Medical Center to verify that it had issued the check to Visario. After "transferring [her] from person to person" for around 10 minutes, the medical center's staff told the teller that Visario did not work there and that the check had actually been issued to a Mary Franklin. 2 Verbatim Report of Proceedings (VRP) at 305.

The teller told Visario she would have to call the police. Gutierrez, who had stood up and approached the window, then became angry and demanded that the teller return Visario's identification, saying that "they didn't want to cash a check with" Checkmate and wished to leave right away. 2 VRP at 294-95, 305. The teller refused to return the identification and called the police.

Fife Police Patrol Commander David Woods and Detectives Jeff Nolta, Michael Malave, and Thomas Gow soon arrived on the scene and arrested Visario and Gutierrez. Gutierrez first tried to pull away from Malave, "and there was like a little wrestle with the cops," 2 VRP at 296, but he became compliant once Malave "put hands on him." 3 VRP at 362. The detectives searched Gutierrez and found in his wallet a credit card issued to a Wilbur Bowen. The detectives also found on Gutierrez's person an insurance billing statement issued to Visario and a Sandra Cardena, as well as a money transfer order partially filled out with Gutierrez's name.

Nolta determined that Visario was the owner or driver of the vehicle involved and obtained his consent to search it. In the center console, in plain view and accessible from any seat in the vehicle, Nolta found a brown vinyl envelope containing "a number of checks and other documents with writing." 2 VRP at 239-40, 255.

The papers in the vinyl envelope included: (1) two apparently valid checks with Visario's account information, (2) a check bearing Credit One Bank's account information with

the payee information erased, and (3) a check bearing North Meridian Contract Collection's account information with the original payee similarly erased and replaced with Visario's name. The envelope also contained (4) an American Express credit card application filled out with the name and personal information of a Vickie Friend, except a different phone number had been entered and the original mailing address had been crossed out and replaced with the address appearing on Gutierrez's driver's license.

## PROCEDURAL HISTORY

The State charged Gutierrez with (1) one count of second degree identity theft based on possessing Franklin's check issued from Valley Medical Center, (2) one count of forgery based on Visario's presentation of the Valley Medical Center check at Checkmate, (3) one count of second degree identity theft based on possessing Friend's personal information, (4) one count of forgery based on the Friend credit card application, (5) one count of second degree possession of stolen property based on possessing Bowen's credit card, and (6) one count of second degree identity theft based on the Bowen credit card. The information alleged that the crimes were "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Clerk's Papers (CP) at 59-61.

At trial, the State presented the testimony of an accountant from Valley Medical Center, the Checkmate teller, and the Fife police officers involved, who testified to the facts set forth above. Friend, Bowen, and Franklin also testified, stating that they did not know Visario or Gutierrez and had not given either man the items at issue or permission to use their personal information. Franklin testified that, prior to this incident, she ordinarily received her paychecks in the mail, but that the check at issue never arrived. Bowen recalled ordering a replacement credit card about a year prior that never arrived, requiring him to cancel it and have a new one

issued, but did not recall discovering any unauthorized charges. Friend did not know of any American Express credit card having been issued to her with the information on the application found in the vinyl envelope.

Gutierrez did not testify. The defense rested without presenting any evidence.

The deputy prosecutor began his closing argument as he had begun his opening statement, with the sayings "when you are in for a penny, you are in for a pound" and "sometimes when you lie down with dogs, you get fleas." 3 VRP at 406. He then argued that Visario and Gutierrez "were working together that day" and "because of that, they become responsible for each other's criminal activities." 3 VRP at 407.

The prosecutor then went on to explain the law of accomplice liability using the court's instruction:

> The instruction explains that a person is an accomplice in the commission of a crime if with the knowledge that it will promote or facilitate the commission of the crime he or she either solicits, commands, encourages or requests another person to commit the crime, or two, aids or agrees to aid another person in planning on [sic] committing the crime.

3 VRP at 407. Gutierrez did not object to this portion of the prosecutor's argument or to the jury instruction that the argument largely tracked.

The jury returned guilty verdicts on the counts involving the Valley Medical Center check and Bowen's credit card, but did not reach unanimous agreement on the two counts, forgery and identity theft, involving the American Express application. The court entered convictions on the jury's verdicts, imposing concurrent sentences resulting in 12 months' confinement and 12 months' community supervision.

As part of the sentence, the court imposed LFOs, including $1,500 in "Court-Appointed Attorney Fees and Defense Costs." CP at 113. Other than a preprinted finding in the judgment

4

and sentence, no evidence in the record suggests that the court considered Gutierrez's present or future ability to pay, but he did not object to this finding in the sentencing proceeding or to the imposition of the LFOs. Gutierrez appeals.

## ANALYSIS

Because Gutierrez's challenge to the sufficiency of the evidence, if successful, could obviate the need to consider other claims, we begin there, then turn to his claims of prosecutorial misconduct and ineffective assistance of counsel. Because we remand for resentencing, we decline to address Gutierrez's claim that the trial court erred in failing to consider his ability to pay certain LFOs.

### I. SUFFICIENCY OF THE EVIDENCE

Gutierrez contends that insufficient evidence supports the forgery and identity theft convictions based on the Valley Medical Center check, because the State failed to establish facts from which the jury could properly hold him liable as an accomplice. He further contends that insufficient evidence supports the identity theft and possession of stolen property convictions based on the Bowen credit card, because the State presented no evidence of the requisite mens rea for the crimes other than Gutierrez's possession of the card itself.

After setting forth the standard of review, we address Gutierrez's claim concerning accomplice liability for the check charges. We then turn to his claim regarding the criminal charges based on the Bowen credit card.

A.    Standard of Review

In evaluating the sufficiency of the evidence, we review the record in the light most favorable to the State. *State v. Ehrhardt*, 167 Wn. App. 934, 943, 276 P.3d 332 (2012) (citing *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010)). We ask "'whether any rational fact

finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)).

An appellant who claims that insufficient evidence supports his conviction "admits the truth of the State's evidence and all reasonable inferences therefrom." *Ehrhardt*, 167 Wn. App. at 943 (citing *Drum*, 168 Wn.2d at 35). Where "the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly based on 'pyramiding inferences.'" *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999) (quoting 1 CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL AND CRIMINAL § 5.17, at 450 (7th ed. 1992)). Inferences drawn from circumstantial evidence "must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

B.      Accomplice Liability for Visario's Attempt To Cash the Check

As relevant, the accomplice liability statute provides that "[a] person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable," namely, "when . . . [h]e or she is an accomplice of such other person in the commission of the crime." RCW 9A.08.020(1), (2)(c). The statute specifies that

> [a] person is an accomplice of another person in the commission of a crime if:
> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3). The trial court instructed the jury accordingly.

Our Supreme Court has made clear that, to be liable as an accomplice, the defendant "must have acted with knowledge that he or she was promoting or facilitating *the* crime for

which [he] was eventually charged." *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000). Specifically, the defendant must "'have the purpose to promote or facilitate the particular conduct that forms the basis for the charge'" and "'will not be liable for conduct that does not fall within this purpose.'" *State v. Roberts*, 142 Wn.2d 471, 510-11, 14 P.3d 713 (2000) (quoting MODEL PENAL CODE § 2.06 cmt. 6(b) (1985)) (emphasis omitted).

Thus, "one's presence at the commission of a crime, even coupled with a knowledge that one's presence would aid in the commission of the crime, will not subject an accused to accomplice liability." *State v. Rotunno*, 95 Wn.2d 931, 933, 631 P.2d 951 (1981). Instead, for accomplice liability to attach, the evidence must show that the merely present defendant at least stood "ready to assist." *Rotunno*, 95 Wn.2d at 933 (internal quotation marks omitted).

Gutierrez contends that the evidence showed only that he was present at the Checkmate while Visario presented the check and that he sought the return of Visario's identification when the teller said she would call the police. He points out that the evidence is equally consistent with his simply having become impatient with the delay, and that, because Visario drove the car in which the men arrived, he could quite innocently have demanded the return of the identification so that he could go about his business. From this he argues that the State failed to prove that he knew about Visario's criminal aim, let alone that he had the purpose to promote or facilitate it or stood ready to assist.

The jury could reasonably infer from the evidence that Gutierrez not only stood ready to assist, but that he actually did assist by angrily demanding the return of Visario's identification once the teller said she would call police. Thus, the only issue is whether the jury could properly infer from the evidence that Gutierrez knew Visario was presenting a forged check.

Gutierrez's anger itself when the teller mentioned the police suggests that he knew Visario's purpose. Gutierrez's initial resistance to Malave's effort to detain him also tends to suggest he knew that Visario was doing something illegal, albeit only weakly: an innocent person could also reasonably take umbrage at being arrested.

However, in light of the discovery of the incriminating documents inside the vehicle in which both men arrived, Gutierrez's conduct in the Checkmate gives rise to a much stronger inference that he knew Visario was presenting an altered check. Viewing the evidence and drawing all reasonable inferences favorably to the State, the jury could properly have inferred beyond a reasonable doubt that Gutierrez knew Visario was engaging in the criminal conduct that gave rise to the identity theft and forgery charges involving the Valley Medical Center check. Because Gutierrez did not just passively stand by, but stood ready and actually sought to assist Visario, we therefore hold that sufficient evidence supports his convictions as an accomplice to the identity theft and forgery charges based on Visario's presentation of the check.

C.      Evidence of Knowledge and Intent as to the Charges Based on the Credit Card

Gutierrez was convicted of one count of second degree possession of stolen property and one count of second degree identity theft based on his possession of the Bowen credit card. The criminal code defines possession of stolen property in relevant part as "knowingly to receive, retain, [or] possess . . . stolen property knowing that it has been stolen and to withhold or appropriate the same." RCW 9A.56.140(1). The identity theft statute requires the State to prove that the defendant "knowingly obtain[ed], possess[ed], use[ed], or transfer[ed] a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1).

8

As to the possession of stolen property charge based on Bowen's credit card, Gutierrez contends the State presented no evidence that he knew the card had been stolen other than the fact of his possession itself, which is insufficient as a matter of law. As to the identity theft charge, he argues that the State presented insufficient evidence not only to show that he knew it was stolen, but that he intended to commit, aid, or abet a crime. We address each claim in turn.

1. Knowledge That the Card Was Stolen

Our Supreme Court has held that, where a criminal statute requires knowledge that property is stolen, "bare possession of recently stolen property alone is not sufficient to justify a conviction." *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). The court noted, however, that "[w]hen a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction." *Couet*, 71 Wn.2d at 776 (internal quotation marks omitted).

The circumstances here give rise to a reasonable inference that someone stole the card from Bowen's mailbox less than a year before police discovered it in Gutierrez's wallet. As shown above, the jury could properly have inferred that Gutierrez acted as an accomplice to the crimes involving the Valley Medical Center check, which someone apparently took from Franklin's mailbox. The evidence also showed that the vinyl envelope contained similarly altered checks, one showing Visario as payee, and a suspicious credit card application containing Friend's personal information but Gutierrez's address.

This provides at least "slight corroborative evidence" that Gutierrez knew that the Bowen credit card was stolen. *Couet*, 71 Wn.2d at 776 (internal quotation marks omitted). Thus, under *Couet* sufficient evidence supports the inference that Gutierrez knew that the card was stolen.

With that, Gutierrez's challenge to the sufficiency of the evidence supporting his conviction for possession of stolen property must fail.

2. Intent to Commit, Aid, or Abet a Crime for Purposes of Identity Theft

Our Supreme Court recently discussed the degree of proof necessary to infer criminal intent in the context of a challenge to the sufficiency of the evidence supporting a forgery conviction:

> When intent is an element of the crime, "intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability." *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991). Though intent is typically proved through circumstantial evidence, "[i]ntent may not be inferred from evidence that is 'patently equivocal'." [*Woods*, 63 Wn. App.] at 592 (quoting *State v. Bergeron*, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985); *State v. Couch*, 44 Wn. App. 26, 32, 720 P.2d 1387 (1986)).

*Vasquez*, 178 Wn.2d at 8. The *Vasquez* court held that Vasquez's possession of forged identification cards, together with his statement to a security guard that the cards were his and evidence that Vasquez held a job, was insufficient to support the necessary inference of intent to injure or defraud. 178 Wn.2d at 14-18.

In reaching this conclusion, the *Vasquez* court relied in part on the New York Court of Appeals' decision in *People v. Bailey*, 13 N.Y.3d 67, 915 N.E.2d 611 (2009), which is also instructive here. *Vasquez*, 178 Wn.2d at 10. Police arrested Bailey after observing him attempt to pickpocket restaurant patrons, searched him, and found money that Bailey admitted knowing was counterfeit. *Bailey*, 13 N.Y.3d at 69. The trial court convicted Bailey of first degree criminal possession of a forged instrument, requiring proof of "'intent to defraud, deceive or injure another.'" *Bailey*, 13 N.Y.3d at 69-70 (quoting MCKINNEY'S PENAL LAW § 170.30). New York's intermediate appellate court affirmed,

10

reason[ing] that the totality of the evidence, including defendant's statement to the police evincing a consciousness of guilt, and the lack of any reason for the defendant to be carrying counterfeit bills in a shopping district other than to pass them, supported the inference that he possessed the bills with the requisite intent.

*Bailey*, 13 N.Y.3d at 70.

The Court of Appeals reversed, rejecting the argument that "the requisite intent for possessing a forged instrument can be drawn from defendant's presence in a shopping district, his possession of counterfeit bills, and his larcenous intent." *Bailey*, 13 N.Y.3d at 72. The court relied on the principle that "the intent to commit a crime must be specific to the crime charged." *Bailey*, 13 N.Y.3d at 72. That is, Bailey's attempts to pick pockets did not adequately support the inference that he intended to pass counterfeit currency, even though he knew the bills were fake and possessed them in a retail shopping area. *Bailey*, 13 N.Y.3d at 72.

Similarly, Gutierrez's conduct at the Checkmate, together with the surrounding facts and circumstances, does not plainly indicate intent to commit, aid, or abet, a crime involving the Bowen credit card "as a matter of logical probability." *Vasquez*, 178 Wn.2d at 8 (internal quotation marks omitted). In light of *Vasquez* and *Bailey*, Gutierrez's apparent intent to help Visario pass a forged check does not properly support the inference that he intended to commit or abet a crime involving Bowen's credit card, even though the jury could properly infer he knew it was stolen. Even when viewed in the light most favorable to the State, the evidence supporting the necessary inference remains "patently equivocal." *Vasquez*, 178 Wn.2d at 8 (internal quotations marks omitted). Consequently, insufficient evidence supports the identity theft conviction based on the Bowen credit card.

## II. PROSECUTORIAL MISCONDUCT

Gutierrez contends that the prosecutor committed flagrant and ill-intentioned misconduct by using the sayings "when you are in for a penny, you are in for a pound" and "sometimes when

11

you lie down with dogs, you get fleas" in his opening statement and closing argument. Br. of Appellant at 10-14. Specifically, Gutierrez argues that (1) these remarks misstated the law and invited the jury to decide the case on an improper basis, (2) case law clearly proscribed such statements at the time of his trial, and (3) no instruction could have cured the resulting prejudice. In the alternative, Gutierrez argues that his trial counsel rendered ineffective assistance by not objecting to these remarks.

A.     The Remarks Were Improper, but Were Not Prejudicial and Could Have Been Cured by an Instruction

To prevail on a prosecutorial misconduct claim, a defendant must show that the prosecutor's conduct was both improper and prejudicial "in the context of the record and all of the circumstances of the trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012), *petition for cert. filed* July 8, 2015. To establish prejudice, the defendant must "show a substantial likelihood that the misconduct affected the jury verdict." *Glasmann*, 175 Wn.2d at 704. A defendant who failed to object at trial must also establish "that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice." *Glasmann*, 175 Wn.2d at 704. Prosecutors enjoy "wide latitude to argue reasonable inferences from the evidence." *Glasmann*, 175 Wn.2d at 704. A prosecutor commits misconduct, however, by misstating the law. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996).

Gutierrez relies primarily on *Cronin*, 142 Wn.2d at 577, where the prosecutor used the expression "in for a penny, in for a pound," and our Supreme Court ultimately reversed. The Court, however, reversed Cronin's murder conviction because the trial court had instructed the jury that it could convict "if it found that he knew he promoted or facilitated the commission of *a crime*," thus relieving the State of its burden to prove the essential element that he "acted with

12

knowledge that his or her conduct would promote or facilitate *the* crime" for which he was charged. *Cronin*, 142 Wn.2d at 578-79, 582 (internal quotation marks omitted).

Unlike *Cronin*, this case does not involve an erroneous jury instruction. The challenged statements by the prosecutor, though, invited the jury to find accomplice liability based on association or presence alone, a standard rejected by *Rotunno*, 95 Wn.2d at 933. The statements also invited the jury to find liability based on Gutierrez's knowledge that his actions would promote any crime, a standard rejected by *Cronin*. Thus, the prosecutor's remarks misstated the law and constituted misconduct.

However, even if the prosecutor's argument constituted misconduct, we fail to see how the improper remarks could have prejudiced Gutierrez. The charged offenses comprised the only criminal conduct he could have intended to aid Visario in committing under the evidence presented. Nothing in the record suggested he may have believed that Visario only planned to commit some lesser offense. Thus, any suggestion that Gutierrez's liability could rest on knowledge he was facilitating any crime would have no practical effect.

Further, although the deputy prosecutor began by suggesting that Visario and Gutierrez "bec[a]me responsible for each other's criminal activities" merely because they "were working together that day," he immediately proceeded to properly explain the law of accomplice liability using the trial court's instruction. 3 VRP at 407. That instruction accurately informed the jury that "[a] person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he . . . aids or agrees to aid another person in planning or committing the crime." CP at 77; *see Cronin*, 142 Wn.2d at 579.

Most importantly, our Supreme Court has held that a curative instruction could remedy the prejudice flowing even from a prosecutor's serious misstatement of the law. *E.g., State v.*

13

*Emery*, 174 Wn.2d 741, 764, 278 P.3d 653 (2012); *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 1940 (2008). As noted, because Gutierrez failed to object at trial, he must also establish "that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice." *Glasmann*, 175 Wn.2d at 704. This he cannot do. Therefore, his prosecutorial misconduct claim fails.

B.     No Ineffective Assistance of Counsel

Gutierrez also contends that his attorney's failure to object to the prosecutor's remarks amounted to ineffective assistance because "the bulk of the prosecution's case . . . was based on the theory of accomplice liability," and therefore "the prosecutor's repeated evocative misstatements of the requirements for such liability were extremely likely to have a highly prejudicial effect." Br. of Appellant at 14. We disagree.

Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant who raises an ineffective assistance claim "bears the burden of showing that (1) his counsel's performance fell below an objective standard of reasonableness and, if so, (2) that counsel's poor work prejudiced him." *A.N.J.*, 168 Wn.2d at 109.

With respect to the first prong, "[t]here is a strong presumption that defense counsel's conduct is not deficient," but the defendant rebuts that presumption if "no conceivable legitimate tactic explain[s] counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To meet the prejudice prong, a defendant must show, "based on the record developed

in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation." *State v. McFarland*, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995).

As discussed above, Gutierrez's claim that the prosecutor's remarks caused any prejudice appears tenuous at best. He does not explain what other crime the jury may have concluded he intended to facilitate in finding accomplice liability, nor does he rebut the presumption that the jury followed the court's instruction to disregard remarks that conflicted with the law as explained by the court. Given that the prosecutor followed the remarks with an accurate statement of the law, it is difficult to see what more an objection and request for a curative instruction could have accomplished.

Under these circumstances, furthermore, defense counsel's decision not to object could conceivably have resulted from legitimate tactical considerations. Indeed, the record shows that defense counsel sought in his own closing argument to use the improper remarks to undermine the prosecutor's credibility with the jury, pointing out that they did not comport with the court's instructions.

Gutierrez can neither rebut the presumption of competent performance nor demonstrate prejudice. His claim of ineffective assistance fails.

## CONCLUSION

We reverse the second degree identity theft conviction arising from Gutierrez's possession of the Bowen credit card, affirm his other convictions, and remand for resentencing. Because we remand for resentencing, we decline to address Gutierrez's claim regarding the imposition of LFOs, except to note that the sentencing court must consider his ability to pay on

remand consistently with our Supreme Court's recent opinion in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) (affirming Court of Appeals' exercise of discretion to refuse to address issue raised for the first time on appeal, but exercising its own discretion to reach the issue and remand to trial court for further proceedings).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

LEE, J.

SUTTON, J.