# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47593-6-II |
| Respondent/Cross-Appellant, | |
| v. | |
| JESUS SOLIS-VAZQUEZ, | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent. | |

JOHANSON, J. — Jesus Solis-Vazquez appeals his jury trial conviction for possession with intent to deliver methamphetamine and his sentence for two firearm enhancements.[1]  We hold that (1) the admission of improper opinion testimony was harmless error, (2) sufficient evidence supports the two imposed firearm enhancements, and (3) Solis-Vazquez's statement of additional grounds (SAG) arguments lack merit.  The State cross appeals, arguing that the trial court erred when it vacated two additional firearm enhancements.  We hold that substantial evidence supports the two vacated enhancements.  Accordingly, we affirm Solis-Vazquez's conviction and two firearm enhancements, reverse the trial court's vacation of two firearm enhancements, and remand for resentencing.

---

[1] Solis-Vazquez was also convicted of two counts of third degree assault and one count of first degree criminal impersonation but is not appealing those convictions.

FACTS

I. BACKGROUND FACTS

In December 2014 in Cowlitz County, Deputy Brady Spaulding stopped a vehicle. Evan Hadlock, the driver, and Vanessa Slape, the front passenger, switched seats once the car stopped. Solis-Vazquez was seated in the back seat behind the driver. Another man referred to as "Delo" was sitting in the back seat behind the passenger. 3A Report of Proceedings (RP) at 498. When asked for identification, Solis-Vazquez offered a false passport.

Deputy Spaulding moved to arrest Hadlock for driving with a suspended license, but when Deputy Spaulding opened the car door, Hadlock put something by the dash and moved his hand toward his leg where there was a loaded shotgun. Deputy Spaulding removed Hadlock from the car after back-up officers arrived, and another officer removed the shotgun.

The other officers drew their weapons. After an officer told Slape to exit the car, she put her hand under her purse on her lap and reached under the seat, but she was eventually taken into custody. Solis-Vazquez and Delo were ordered to keep their hands up, but they kept dropping their hands towards the car floor, and Solis-Vazquez put his hands to his lap. Despite an officer's warnings that he would shoot if Solis-Vazquez put his hands down again, Solis-Vazquez put his hands down, reaching for something at least two more times.

Another officer removed Delo from the rear passenger seat, and Solis-Vazquez lunged out of the open passenger door. Three police officers pursued Solis-Vazquez. When the officer caught up with Solis-Vazquez, he struggled with them, swung his arms with closed fists at them, struck and kicked Officer Jeffery Gann, and tried to take an officer's stun gun. He continued to fight and attempted to run even after officers twice tried to stop him with a stun gun and once with a vascular

neck restraint. Solis-Vazquez was handcuffed and arrested only after an officer hit him several times with a baton and applied another vascular neck restraint, causing Solis-Vazquez to lose consciousness. Police found $1,933 in fives, tens, and twenties in Solis-Vazquez's possession.

Delo ran at the same time as did Solis-Vazquez, but the pursuing officers lost sight of him near several large tractor-trailers. Another officer arrived to help search for Delo and found two baggies containing 25.4 grams each of methamphetamine wrapped in white plastic bags under one of the tractor-trailers.

## II. FIREARMS

In the vehicle, Deputy Spaulding found a loaded semiautomatic pistol under the front passenger seat with the grip pointed towards the front of the car. Behind the front passenger seat, where Delo had been seated, was a box that contained two loaded magazines and another loaded semiautomatic pistol. There was also an unloaded .38 caliber revolver in a paper bag between the rear passengers' seats with the bag's opening pointed towards where Solis-Vazquez had been seated. The revolver held five rounds, and five .38 caliber bullets were found on the back seat.

Under the back of the driver's seat, Deputy Spaulding found two black plastic bags that contained methamphetamine weighing a total of 61.4 grams. Deputy Spaulding also discovered two small baggies with residue consistent with methamphetamine in the ashtray in the car's dashboard.

### III. CHARGING AND TRIAL

Relevant here, the State charged Solis-Vazquez with possession with intent to deliver methamphetamine.[2] The information also alleged that Solis-Vazquez or an accomplice was armed with the four firearms found in the vehicle during the commission of the drug offense.

At trial, Officer Timothy Watson, who used to serve on a drug task force, testified for the State. Officer Watson testified that local dealers typically carry methamphetamine in ounce or eighth ounce quantities and sell it to users in eighth of an ounce or one-sixteenth of an ounce quantities. An ounce of methamphetamine would sell for $600 to $1,000. It is unlikely an ounce would be for personal use because an average user would only use one-sixteenth to one-half-sixteenth of an ounce per day. One-sixteenth of an ounce is 1.77 grams. Watson further testified that street drug deals usually involve exchanging smaller bills like fives, tens, and twenties, that cars are the most common way to transport drugs in Cowlitz County, and that guns are sometimes used for protection during drug transactions.

Deputy Spaulding also testified for the State. During cross-examination, Solis-Vazquez's counsel elicited Deputy Spaulding's testimony that he arrested Slape for possessing the drugs found under the driver's seat. On redirect, Deputy Spaulding testified that the drugs found under the driver's seat were most easily accessed by the back seat passenger, Solis-Vazquez, and that in addition to Slape, Deputy Spaulding arrested Solis-Vazquez and Hadlock for the drugs under the driver's seat. The State then asked Deputy Spaulding "[w]hat did you believe about the three

---

[2] Solis-Vazquez was also charged with first degree unlawful possession of a firearm and disarming a law enforcement officer, which were dismissed by the trial court.

people in the car?" 3A RP at 457. Deputy Spaulding replied, "That they had knowledge or -- about these drugs in the car." 3A RP at 457-58. Defense counsel did not object on any basis.

Solis-Vazquez testified that he was from Oregon, that he was visiting a friend in Cowlitz County that day, and that he asked Delo for a ride home. He ran from police because he feared being arrested for using a fake passport as identification. He stated that he had never met Slape or Hadlock before and was not aware that there were guns or drugs in the car. He also testified that the money in his wallet was his savings from a construction job, that he was just in the car for a ride, and that he was not working with anyone to sell drugs.

## IV. ACCOMPLICE JURY INSTRUCTION

The State argued that the evidence supported an accomplice jury instruction. The State's theory was that each person in the car was armed and that Solis-Vazquez was an accomplice, riding with a gun ready to assist the others in selling drugs, or that Solis-Vazquez himself possessed the drugs with intent to deliver and the others were his accomplices. The trial court gave an accomplice liability instruction.

## V. CLOSING ARGUMENT

The State argued in closing that although Solis-Vazquez could have been an accomplice, the evidence was strong that he possessed the methamphetamine with intent to deliver. The State further argued that Solis-Vazquez may have sold the methamphetamine to Delo and that Delo left it under the tractor-trailer. And the State argued that each firearm enhancement was warranted because there was a connection between Solis-Vazquez or one of his accomplices to each gun found in the car, all of which were used to conduct the business of selling methamphetamine.

## VI. CONVICTION AND VACATED FIREARM ENHANCEMENTS

Relevant here, the jury found Solis-Vazquez guilty of possession with intent to deliver methamphetamine with four firearm enhancements. The jury also found on each firearm enhancement that Solis-Vazquez or his accomplice was armed with each of the four firearms found in the car. Solis-Vazquez filed a motion for arrest of judgment to set aside the special verdicts for the firearm enhancements. The trial court vacated two firearm enhancements because it found that there was insufficient evidence to support the enhancements for the two firearms found in the front seat.

## VII. SENTENCING AND APPEAL

Solis-Vazquez was sentenced to 92 months total confinement and the trial court imposed $1,200 in mandatory legal financial obligations (LFOs) and no restitution. The trial court entered an order of indigency for appeal.

Solis-Vazquez appeals his conviction for possession with intent to deliver and the two imposed firearm sentencing enhancements. The State cross appeals the trial court's decision to vacate the other two firearm enhancements.

## ANALYSIS

### I. OPINION TESTIMONY

Solis-Vazquez argues that Deputy Spaulding's statement that everyone in the car knew about the drugs was improper opinion testimony and that such error was not harmless.[3] We hold that the comment, if improper, was harmless.

---

[3] Although Solis-Vazquez failed to object to Deputy Spaulding's testimony on this ground below, because his argument implicates the constitutional right to a jury trial, we allow him to raise it for the first time on appeal. RAP 2.5(a).

A. STANDARD OF REVIEW AND RULES OF LAW

We review manifest constitutional error claims de novo. *State v. Curtis*, 110 Wn. App. 6, 11, 37 P.3d 1274 (2002); *see also State v. Rice*, 174 Wn.2d 884, 892, 279 P.3d 849 (2012) (stating issues of constitutionality are questions of law subject to de novo review). If we determine that the claim raises a manifest constitutional error, it may still be subject to harmless error analysis. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). A constitutional error is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007).

This test is met if the untainted evidence presented at trial is so overwhelming that it leads necessarily to a finding of guilt. *Watt*, 160 Wn.2d at 636. Furtive gestures, evasive behavior, and flight from the police are circumstantial evidences of guilt. *State v. Graham*, 130 Wn.2d 711, 726, 927 P.2d 227 (1996); *see also State v. McDaniel*, 155 Wn. App. 829, 854, 230 P.3d 245 (2010).

B. HARMLESS ERROR

Solis-Vasquez contends that because there was no direct evidence showing that he knew the drugs were in the car, the deputy's opinion testimony influenced the jury's decision regarding this fact, and thus the error was not harmless. We assume without deciding that admission of Deputy Spaulding's statement was manifest constitutional error. But we hold that the admission of the testimony was harmless error because overwhelming untainted evidence supports Solis-Vazquez's conviction.

Under RCW 69.50.401(1) and (2)(b), it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver methamphetamine. A person is an accomplice of another person in the commission of a crime if, with knowledge that it will promote or facilitate

7

the commission of the crime, he aids or agrees to aid another person in planning or committing the crime.  RCW 9A.08.020(3).

Here, two bags of methamphetamine weighing a total of 61.4 grams—approximately 2.17 ounces—were found under the driver's seat in front of where Solis-Vazquez sat in the car.  Officer Watson testified that an average methamphetamine user would use only around one-sixteenths of an ounce—1.77 grams—or half that per day.  Thus, it would be unlikely for an individual to carry an ounce or more at a time for personal use.  Deputy Spaulding testified that the back seat passenger, Solis-Vazquez, would have had the easiest access to these drugs.  And despite being told multiple times to keep his hands up, including once with the threat that he would be shot otherwise, Solis-Vazquez reached towards the floor of the car three times after police arrived as if to access these drugs.  This is strong circumstantial evidence that Solis-Vazquez knew that there were drugs in the car and possessed an amount intended for distribution.

Officer Watson testified that an ounce would sell for $600 to $1,000, and street drug deals usually involve exchanging smaller bills like fives, tens, and twenties.  And here, Solis-Vazquez was found with $1,933 in small bills.  Officer Watson also testified that cars are the most common way to transport drugs in Cowlitz County and that guns are sometimes used during drug transactions for protection.  Here, there were three loaded guns in the car.  There was also a fourth gun, the unloaded .38 caliber revolver, in a paper bag between the rear passenger seats with the opening of the bag pointed towards where Solis-Vazquez had been seated.  This is strong circumstantial evidence that Solis-Vazquez had cash from selling drugs and that he and the others in the car were armed for protection in order to further ongoing drug transactions.

Finally, Solis-Vazquez took extreme measures to avoid being caught, which further evidences his involvement in the drug crime. He provided Deputy Spaulding with a false passport. Solis-Vazquez ran from the car, and three police officers pursued him. Solis-Vazquez struggled with the officers when they caught up with him, swung his arms at them with closed fists, struck and kicked Officer Gann, tried to take an officer's stun gun, and continued to fight and run after officers twice tried to stop him with a stun gun and once with a vascular neck restraint. Solis-Vazquez was handcuffed and arrested only after an officer hit him several times with a baton and applied another vascular neck restraint, causing Solis-Vazquez to lose consciousness. Evidence of attempted escape is strong circumstantial evidence that Solis-Vazquez was aware he was guilty of a crime. *Graham*, 130 Wn.2d at 726.

In sum, the untainted overwhelming evidence would necessarily lead to a finding that Solis-Vazquez possessed methamphetamine with intent to deliver pursuant to RCW 69.50.401(1) and (2)(b) under either principal or accomplice liability. We hold that even assuming the admission of Deputy Spaulding's statement was manifest constitutional error, any error was harmless in light of the untainted overwhelming evidence.

## II. SUFFICIENCY OF THE EVIDENCE FOR THE FIREARM ENHANCEMENTS

Solis-Vazquez argues that there was no evidence that he and Delo worked together to deliver methamphetamine or knew the other was in possession of the drugs, and therefore there was insufficient evidence to establish that they were accomplices in the drug crime. Solis-Vazquez

argues that as a result, the firearm enhancements for the back seat firearms cannot stand because they were dependent, in part, on finding that Delo was Solis-Vazquez's accomplice.[4]

In its cross appeal, the State argues that the trial court erred when it vacated the two firearm enhancements for the front seat firearms. The State argues that there was sufficient evidence that either or both of the front seat occupants, Hadlock and Slape, were Solis-Vazquez's accomplices to the possession with intent to deliver methamphetamine crime, which supported the firearm enhancements. Based on the evidence described above, we hold that there was sufficient evidence to support all four of the firearm enhancements.

A. ACCOMPLICE LIABILITY AND FIREARM ENHANCEMENTS

A person is an accomplice of another person in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he aids or agrees to aid another person in planning or committing the crime. RCW 9A.08.020(3). The State must prove that a defendant actually knew that he was promoting or facilitating the crime at issue and may do so with circumstantial evidence. *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015). It is not necessary that jurors be unanimous as to the manner of an accomplice's and a principal's participation as long as all agree that they did participate in the crime. *State v. Walker*, 182 Wn.2d 463, 484, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015).

Under RCW 69.50.401(1) and (2)(b), it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver methamphetamine. To support a firearm enhancement, the State had to prove beyond a reasonable doubt that Solis-Vazquez or an

---

[4] Solis-Vazquez concedes that there was evidence from which the jury could find both Solis-Vazquez and Delo possessed methamphetamine. Solis-Vazquez does not challenge the conclusion that either he or Delo was armed.

accomplice was armed with a firearm at the time of the commission of the crime of possession with intent to deliver methamphetamine. Former RCW 9.94A.533(3) (2013). A firearm is considered a "deadly weapon" whether loaded or unloaded. RCW 9A.04.110(6).

### B. EVIDENCE SUPPORTING THE BACK SEAT FIREARM ENHANCEMENTS

First, we consider whether a rational jury could have concluded from the evidence discussed above that Delo and Solis-Vazquez were accomplices in the drug possession crime in order to support the back seat firearm enhancements.

"The sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). To determine if sufficient evidence supports a conviction, we consider whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903.

Here, in addition to the quantity of methamphetamine that the jury could have concluded Solis-Vazquez possessed, a rational jury could have concluded that Delo possessed the nearly two ounces of methamphetamine split into two baggies found near where police lost sight of him. A rational jury could have thus concluded that both men possessed quantities of methamphetamine far exceeding personal use amounts, that they intended to deliver, and that they split a large amount of methamphetamine between them, which supports that they were working together. Further, both men rode in the back seat of the car.

Both men also had firearms readily accessible to each of them in the car. Thus, a rational jury could have concluded that the men were armed in order to facilitate the distribution of the drugs found in the car. And given the $1,933 that Solis-Vazquez had on him in small bills, a

rational jury could have concluded that Solis-Vazquez's money came from a recent drug transaction.

Finally, a rational jury could have also concluded that Solis-Vazquez and Delo were aiding in the same crime based on their behavior after the car was stopped by police: both men repeatedly reached towards the car floor despite being told by police to keep their hands up. And Solis-Vazquez and Delo ran from police at the same time. Thus, a rational jury could have concluded that they were reaching for the drugs or the firearms and planned to escape together in light of their shared crime.

Knowledge for accomplice liability may be proved through circumstantial evidence. *Allen*, 182 Wn.2d at 374. And viewing the circumstantial and direct evidence discussed above and in the rest of the record in the light most favorable to the State, a rational trier of fact could have concluded that Solis-Vazquez and Delo were accomplices in the commission of the crime of possession of methamphetamine with intent to deliver to support the firearm enhancements beyond a reasonable doubt. We hold that there was sufficient evidence to support the firearm enhancements related to the firearms in the back seat.

## C. EVIDENCE SUPPORTING THE FRONT SEAT FIREARM ENHANCEMENT

Second, we address the State's cross appeal argument that the trial court erred when it vacated the two firearm enhancements arising out of the front seat firearms. We consider whether a rational jury could have concluded from the evidence that Solis-Vazquez, Slape, and Hadlock were accomplices in the possession of methamphetamine with intent to deliver in order to support the front seat firearm enhancements vacated by the trial court.

Solis-Vazquez filed a motion for arrest of judgment to set aside the special verdicts for the firearm enhancements. We review a trial court's decision on a motion for arrest of judgment de novo. *State v. Ceglowski*, 103 Wn. App. 346, 349, 12 P.3d 160 (2000). Judgment may be arrested on the motion of the defendant when there is insufficient proof of a material element of the crime. CrR 7.4(a). In ruling on a motion for arrest of judgment, the trial court may not weigh the evidence; instead, it may only test or examine the sufficiency of the evidence. *State v. Randecker*, 79 Wn.2d 512, 517, 487 P.2d 1295 (1971); *State v. Hampton*, 100 Wn. App. 152, 157, 996 P.2d 1094 (2000), *rev'd on other grounds*, 143 Wn.2d 789, 24 P.3d 1035 (2001). When reviewing a trial court's decision on a motion for arrest of judgment, we engage in the same sufficiency inquiry as the trial court. *State v. Longshore*, 141 Wn.2d 414, 420, 5 P.3d 1256 (2000).

The fact that a trial or appellate court may conclude the evidence is not convincing does not justify the court's setting aside the jury's verdict. *State v. Tinajero*, 154 Wn. App. 745, 751, 228 P.3d 1282 (2009). Thus, we do not have to be satisfied of the defendant's guilt beyond a reasonable doubt—it is only necessary for this court to be satisfied that there is substantial evidence to support the State's case. *Randecker*, 79 Wn.2d at 518. "We evaluate a trial court's decision to vacate a jury verdict by first reviewing the elements of the crime charged." *Tinajero*, 154 Wn. App. at 749.

As was discussed above, a rational jury could have concluded that Solis-Vazquez possessed quantities of methamphetamine far exceeding user amounts, which he intended to deliver. A rational jury could have further concluded that Slape and Hadlock were aware Solis-Vazquez possessed the methamphetamine and planned to distribute it because there was evidence that Slape and Hadlock knew drugs were in the car: Deputy Spaulding discovered two small baggies with

residue consistent with methamphetamine in the ashtray in the car's dashboard that presumably would have been visible to Slape and Hadlock in the front seat. And because Slape and Hadlock were in the front seat, a rational jury could have concluded that they were providing Solis-Vazquez with a ride in order to distribute drugs.

Solis-Vazquez also had $1,933 in small bills on him. And as was discussed above, a rational jury could have concluded that Solis-Vazquez's money came from a recent drug transaction. All three individuals also had firearms readily accessible to each of them in the car. And as was discussed above, a rational jury could have concluded that Slape, Hadlock, and Solis-Vazquez were armed in order to facilitate the distribution of the drugs found in the car.

Finally, a rational jury could have also concluded that Solis-Vazquez, Slape, and Hadlock aided in the same crime based on their behavior after the police stopped the car. Despite being told by police to keep her hands up, like Solis-Vazquez, Slape reached towards the car floor. And when Deputy Spaulding opened the passenger door to arrest Hadlock, he saw Hadlock put something by the dash—where the bags with methamphetamine residue were found—and move his hand toward his leg where the shotgun rested. A rational jury could have concluded that Solis-Vazquez, Slape, and Hadlock reached to access the drugs and/or firearms, and that could indicate they shared knowledge of the crime of possession with intent to deliver. A rational jury could have inferred that Hadlock's actions evidenced an attempt to possibly pull a gun on an officer, which could show knowledge of involvement of the crime of possession with intent to deliver.

Hadlock and Slape also switched seats when their car was pulled over. Thus, when viewing the evidence in the light most favorable to the State, a rational trier of fact could have found both firearm enhancements by finding only Hadlock or Slape was an accomplice because they both had

access to both guns in the front area of the car at different intervals of time. Viewing the circumstantial evidence discussed above in the light most favorable to the State, a rational trier of fact could have found Hadlock and/or Slape were Solis-Vazquez's accomplices and were armed with the firearms in the front seat of the car. *Rich*, 184 Wn.2d at 903.

The trial court found that there was insufficient evidence that Hadlock and Slape were accomplices in order to support the enhancements for the two firearms in the front of the car. But the fact that a trial court may find that the evidence is not convincing does not justify the court's setting aside the jury's verdict. *Tinajero*, 154 Wn. App. at 751. We hold that there was substantial evidence to support the jury's determination.

### III. SAG CLAIMS

### A. ACCOMPLICE LIABILITY INSTRUCTION

Solis-Vazquez argues that the trial court abused its discretion by including an accomplice liability instruction over his objection. We disagree.

A trial court's decision to give a particular jury instruction is reviewed for abuse of discretion. *State v. Chase*, 134 Wn. App. 792, 803, 142 P.3d 630 (2006). Jury instructions are sufficient when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). The appellate court views the supporting evidence in the light most favorable to the party that requested the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

The accomplice liability instruction matched the language of the accomplice liability statute, RCW 9A.08.020(3), and the relevant *Washington Pattern Jury Instruction*. 11

15

WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 234 (4th ed. 2016) (WPIC).

Here, the accomplice liability instruction allowed the State to argue its theory of the case that the other people in the car were Solis-Vazquez's accomplices in the drug possession crime. And the instruction properly informed the jury of the applicable law because the instruction followed the applicable statute and WPIC. RCW 9A.08.020(3); WPIC 10.51; *Barnes*, 153 Wn.2d at 382.

Additionally, as was discussed above and as the trial court acknowledged, the State proffered evidence to support an instruction on accomplice liability. Viewed most favorably to the State, the evidence showed that Solis-Vazquez possessed methamphetamine with intent to deliver and that the other individuals in the car were armed in order to knowingly assist with the crime as necessitated to prove accomplice liability under RCW 9A.08.020(3). *Fernandez-Medina*, 141 Wn.2d at 455-56. Thus, we hold that the trial court did not abuse its discretion by giving the accomplice liability instruction.

## B. PROSECUTORIAL MISCONDUCT

Solis-Vazquez argues, for the first time on appeal, that the prosecutor committed misconduct by referring to facts not in evidence when the prosecutor (1) encouraged a witness to state his personal belief that "'somebody had to know'" about the drugs thus implying that the suspects were lying, (2) put forth the theory that the drugs found under the tractor-trailer were Delo's drugs, and (3) alleged in closing argument that Solis-Vazquez sold drugs to Delo. SAG at 5. We disagree.

1.    LEGAL PRINCIPLES

Prosecutorial misconduct allegations are reviewed under an abuse of discretion standard. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).  The defendant bears the burden to show the prosecuting attorney's conduct was both improper and prejudicial.  *Lindsay*, 180 Wn.2d at 430.  If the defendant fails to object or request a curative instruction at trial, the issue of misconduct is waived unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.  *Lindsay*, 180 Wn.2d at 430.  "Once proved, prosecutorial misconduct is grounds for reversal where there is a substantial likelihood that the improper conduct affected the jury."  *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

2.    INSTANCES OF ALLEGED PROSECUTORIAL MISCONDUCT

Here, defense counsel did not object at trial to any instance that Solis-Vazquez argues show prosecutorial misconduct, and thus these misconduct issues are waived unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Lindsay*, 180 Wn.2d at 430.  Solis-Vazquez does not establish that the conduct rose to such a level.

a.    ENCOURAGING A WITNESS TO STATE A PERSONAL BELIEF

First, contrary to Solis-Vazquez's SAG argument, no witness in the record stated that "'somebody had to know.'"  SAG at 5.  But we assume Solis-Vazquez is referring to Deputy Spaulding's testimony that Hadlock, Solis-Vazquez, and Slape knew about the drugs in the car after the prosecutor asked him "[w]hat did you believe about the three people in the car?"  3A RP at 457.  This conduct is not grounds for reversal.

A prosecutor commits misconduct when his examination seeks to compel a witness to give an opinion on whether another witness is telling the truth.  *State v. Hughes*, 118 Wn. App. 713,

725-26, 77 P.3d 681 (2003) (citing *State v. Jerrels*, 83 Wn. App. 503, 507, 925 P.2d 209 (1996)). But where defense counsel raises no objection, we reverse only if the evidence was material to the trial's outcome and a curative instruction could not have remedied any prejudice. *Hughes*, 118 Wn. App. at 726 (citing *State v. Suarez-Bravo*, 72 Wn. App. 359, 367, 864 P.2d 426 (1994)).

But as analyzed above, even if admission of Spaulding's testimony was improper, this evidence was not material to the trial's outcome. Untainted overwhelming evidence supports Solis-Vazquez's conviction for possession with intent to deliver. Thus, Solis-Vazquez fails to meet his burden to show that there is a substantial likelihood the improper conduct affected the jury, and thus this conduct is not grounds for reversal. *Fisher*, 165 Wn.2d at 747.

      b.      ASSERTION THAT RECOVERED DRUGS BELONGED TO DELO

Second, Solis-Vazquez argues that the State's statement in closing argument that the bundles found under the tractor-trailer belonged to Delo was unsupported by the evidence. Solis-Vazquez asserts that this is so because the drug bundles found in the car and under the tractor-trailer did not have matching packaging and because it would have been unreasonable for Delo to throw away his drugs once he got away from police. We disagree.

During closing argument, the prosecuting attorney has wide latitude in making arguments to the jury, and prosecutors are allowed to draw reasonable inferences from the evidence. *Fisher*, 165 Wn.2d at 747. "We review allegedly improper comments in the context of the entire argument." *Fisher*, 165 Wn.2d at 747.

Solis-Vazquez is correct that the packaging of the bundle found under the tractor-trailer and the bundle found in the car did not match. But prosecutors are allowed to draw reasonable inferences from the evidence during closing argument. *Fisher*, 165 Wn.2d at 747. Here, the police

found methamphetamine baggies under a tractor-trailer near where police had recently lost sight of Delo. It is reasonable to infer from this evidence that after Delo fled a car where methamphetamine was also found, he was carrying methamphetamine, believed he would be in worse trouble if he were caught with it, and so decided to hide it before continuing to flee. We hold that it was reasonable during closing for the State to infer that the drugs belonged to Delo. *Fisher*, 165 Wn.2d at 747. Thus, Solis-Vazquez fails to meet his burden to show that this statement represented prosecutorial misconduct. *Lindsay*, 180 Wn.2d at 430.

   c.   ASSERTION THAT SOLIS-VAZQUEZ SOLD DRUGS TO DELO

  Third, Solis-Vazquez argues that the prosecutor's statement in closing argument that Solis-Vazquez sold drugs to Delo was unsupported by the evidence. We disagree.

  Here, as discussed above, Solis-Vazquez was arrested with $1,933 in small bills and the jury heard testimony that an ounce of methamphetamine would sell for $600 to $1,000 and street drug deals usually involve exchanging smaller bills. And nearly two ounces, which could have been purchased for an amount close to what Solis-Vazquez had, were found where police lost sight of Delo. We hold that it was reasonable during closing for the State to imply based on this evidence that Solis-Vazquez sold the drugs found under the tractor-trailer to Delo. *Fisher*, 165 Wn.2d at 747. Thus, Solis-Vazquez fails to meet his burden to show that this statement represented prosecutorial misconduct. *Lindsay*, 180 Wn.2d at 430.

     C. INEFFECTIVE ASSISTANCE OF COUNSEL

  Finally, Solis-Vazquez states that, in "the alternative, it was ineffective assistance of counsel for failing to object." SAG at 7. Presumably, the failure to object refers to the two claimed

instances of prosecutorial misconduct addressed above. We disagree that defense counsel provided ineffective assistance.

An ineffective assistance of counsel claim requires a defendant to bear the burden to show (1) counsel's performance was deficient and (2) the attorney's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 700. A defendant is prejudiced by deficient assistance if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

As was discussed above, the untainted evidence excluding Deputy Spaulding's opinion testimony was overwhelming such that the untainted evidence would necessarily lead to a finding of guilt. Thus, even if we assumed Solis-Vazquez's counsel was deficient, there is not a reasonable probability that but for an error by counsel the result of the proceeding would have been different. Further, as held above, the prosecutor's assertion that Solis-Vazquez sold drugs to Delo did not constitute misconduct. Thus, Solis-Vazquez's ineffective assistance of counsel claim fails.

## IV. APPELLATE COSTS

Solis-Vazquez argues that this court should decline to impose appellate costs because he is indigent. We agree.

We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f). Former RCW 10.73.160(1) (1995) vests the appellate court with discretion to award appellate costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review.

No. 47593-6-II

Here, Solis-Vazquez was sentenced to 92 months total confinement and the trial court imposed $1,200 in standard, mandatory LFOs. The trial court also entered an order of indigency for appeal. We exercise our discretion and hold that an award of appellate costs to the State is not appropriate in light of the length of Solis-Vazquez's sentence, indigence, and LFOs already imposed.

We affirm Solis-Vazquez's convictions and deny appellate costs. We also reverse the trial court's decision to vacate the jury's firearm special verdicts and remand for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.